JOHN S. JONES v. W. T. TURLINGTON AND WIFE, CHELLIE TURLINGTON; J. HEDRICK AMAN AND WIFE, SALLIE H. AMAN; FRANK A. SMITH AND WIFE, PEARL SMITH, AND ELBERT GUTHRIE.

(Filed 21 March, 1956.)

**1. Deeds § 13a—**

Conveyance of a lot, without reservation, according to a map showing the lateral lines extending across the full width of a street on the front of the lot carries the fee in the land covered by the street, subject to the easement of the street.

**2. Waters and Watercourses § 1—**

The grantee of a lot, including the fee subject to an easement for a street across the end of the lot fronting on navigable water, is entitled, as littoral or riparian owner, to land gradually built up through forces of nature or processes of accretion from the water.

**3. Ejectment §§ 15, 17—**

In an action to recover possession of land, the burden is upon plaintiff to make out his title, and where he fails to show title in himself, nonsuit is proper.

APPEAL by plaintiff from *Bundy, J.*, at October 1955 Civil Term, of CARTERET.

Civil action for recovery of land together with all rights and privileges incident thereto, and for injunctive relief, and for damages for trespass thereon.

Plaintiff alleges in his complaint that "he is the owner of certain tract or parcel of land in White Oak Township, Carteret County, lying between the southern boundary or edge of Front Street and the waters of Inland Waterway . . . together with all riparian rights incident thereto."

Defendants, answering the complaint, deny the title of plaintiff to the lands above described.

· Upon trial in Superior Court it was stipulated and agreed: "1. . . . that in June, 1936, the plaintiff was the owner in fee of all the lands described in that certain map of Philip K. Ball, Engineer, now of record in the office of the Register of Deeds of Carteret County in Map Book 1, page 113, and which map or plat is referred to as John S. Jones property known as "Cedar Point."

"2. . . . that by deed of August 28, 1936, of record in the office of the Register of Deeds of Carteret County in Book 81, page 325, the plaintiff John S. Jones and his wife, May F. Jones, conveyed to one B. F. Humphrey certain lands in the John Jones subdivision referred to, including among others, that designated in the conveyance as Lot 188 of the aforesaid subdivision according to the referred to map or plat in said Book 1, page 113.

"3. . . . that the aforesaid map or plat by Philip K. Ball, Engineer, appearing in Book 1, page 113, be made a part of the record, and for such purpose was introduced in evidence, and marked as plaintiff's Exhibit 1."

Reference to the map, Exhibit 1, above, discloses these facts: (1) That the southern boundary line of the land embraced therein borders on what is shown on the map to be the north side of "U. S. Intra-Coastal Waterway"; (2) that along said southern boundary of the land embraced in the map and designated as subdivisions or lots 180 to 190, both inclusive, there appears the lines of a street designated as Front Street 50 feet in width,—the southern line being co-terminous with the northern edge of the U. S. Intra-Coastal Waterway, as aforesaid; and (3) that the lateral lines of lots 180 to 190, including lot No. 188, as aforesaid, on east and west extend in general north-south direction across the lines of the street referred to in preceding paragraph and terminate in the said northern edge of U. S. Intra-Coastal Waterway,—thus lot No. 188 appears to front on said waterway.

These further facts appear upon the face of the map: There are two legends: (1) Reading: "All lots that border on the water of the ordinary highwater mark extend out to the edge of the various channels

and waterways and include all adjoining marshes, islands, and made-up land in front of the respective lots, and the lots carry full riparian rights"; and (2) reading: "Note: Farms 180 to 190 distances are figured to ordinary highwater mark, but 50 feet street is excepted from acreage."

And in reference to all lots, including No. 188, the lateral lines bear indicia of course and distance, and the larger lots or subdivisional parts show acreage figures—lot No. 188 being "17.53 Ac."

(The land now in controversy, as plaintiff contends, is land lying between the land, lot No. 188, conveyed by plaintiff to his grantee, B. F. Humphrey, on August 28, 1936, as aforesaid, and the waters of U. S. Intra-Coastal Waterway, which he contends is land that has gradually built up through forces of nature or processes of accretion.)

At the close of plaintiff's evidence motion of defendants for judgment as of nonsuit was allowed, to which plaintiff excepted and from judgment in accordance therewith appeals to Supreme Court, and assigns error.

*Luther Hamilton and Luther Hamilton, Jr., for plaintiff, appellant.*
*Albert Ellis and C. R. Wheatley, Jr., for defendants, appellees.*

WINBORNE, J.   This is pivotal question on this appeal: Bearing in mind that the lateral lines of lot No. 188, as shown on the map, and as indicated by the legends appearing on the map, extend across the full width of Front Street to the ordinary highwater mark of U. S. Intra-Coastal Waterway, does the conveyance of the lot according to the map, without reservation, carry the fee in the land covered by the street? The answer is "Yes," subject to the easement of the street. Thus the conveyance by plaintiff, without reservation, vested in his grantee ownership of land bordering on the waterway, with littoral or riparian rights incident to such ownership.

For as stated by this Court in *O'Neal v. Rollinson,* 212 N.C. 83, 192 S.E. 688, quoting from *Bond v. Wool,* 107 N.C. 139, 12 S.E. 281, "In the absence of any special legislation on the subject a littoral proprietor and a riparian owner, as is universally conceded, have a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their water fronts to navigable water, and the right to construct wharves, piers, or landings, subject to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the protection of the public rights in rivers and navigable waters." See G.S. 146-6. And, again, in same case, at page 149, it is said: "This qualified property, that,

according to well settled principles, as interpreted in nearly all the highest courts in the United States, is necessarily incident to riparian ownership, extends to the submerged lands bounded by the water front of a particular proprietor, the navigable water and two parallel lines projected from each side of his front to navigable water." See also *Gaither v. Hospital*, 235 N.C. 431, 70 S.E. 2d 680.

Indeed the principle of accretion is based upon littoral or riparian ownership of water frontage. "Generally, accretion is the increase of riparian land by the gradual deposit, by water, of solid material, whether mud, sand or sediment, so as to cause that to become dry land which was before covered by water." 56 Am. Jur. 891, Waters, Sec. 476. And "it is a general rule that where the location of the margin or bed of a stream or other body of water which constitutes the boundary of a tract of land is gradually and imperceptibly changed or shifted by accretion, reliction, or erosion, and margin, or bed of the stream or body, as so changed, remains the boundary line of the tract, which is extended or restricted accordingly. The owner of the riparian land thus acquires title to all additions thereto or extensions thereof by such means and in such manner, and loses title to such portions as are so worn or washed away or encroached upon by the water, in the absence of any provisions or agreement to the contrary." 56 Am. Jur. 892, Waters, Sec. 477.

It follows from the foregoing that in order to establish title to accretions, the claimant must show that they are formed by deposits against upland owned by him or his grantors. The principle was applied by this Court in the case of *Murry v. Sermon*, 8 N.C. 56, in which the headnote in pertinent part reads: "If a lake recede gradually and insensibly, the derelict land belongs to the riparious proprietor . . ."

There are other exceptions taken in the course of the trial and covered by assignments of error, but in view of the decision reached they are deemed immaterial. The burden was upon plaintiff to make out his title, and he must rely upon the strength of it. *Locklear v. Oxendine*, 233 N.C. 710, 65 S.E. 2d 673. And having failed to show title in himself, the judgment from which appeal is taken is

Affirmed.