STATE OF NORTH CAROLINA v. MYRTLE ADAMS FOREHAND AND HUSBAND WILLIAM T. FOREHAND; LOUISE BADHAM; EMMA BADHAM GARD-NER; HELEN HOUSE; HENRY C. HOUSE, III AND WIFE, MARY O. HOUSE; J. MEREDITH JONES AND WIFE, ELVIRA JONES; BURTON H. JONES AND WIFE, JEAN JONES; KNOWN AND UNKNOWN, BORN AND UNBORN HEIRS OF W. H. JONES, DECEASED; UNKNOWN PARTIES, DEFENDANTS v. JOHN POOL AND WIFE, ELIZABETH POOL, INTERVENORS v. MIRIAM F. McFADDEN, ET AL., IN-TERVENORS v. SOUTHHOLD REALTY CORP., INTERVENORS

No. 821SC1315

(Filed 6 March 1984)

1. **State § 2.1— prohibition on sale in fee simple of State lands under navigable waters**

An intervenors' deed based on a 1909 State grant was void on its face to convey a fee title in land since the grant purported to convey 33 acres of submerged lands "covered by water of Roanoke and Albemarle Sounds," and since almost from statehood, North Carolina policy has leaned toward a prohibition on the sale in fee simple of State lands under navigable waters. Intervenors' "title" was to an exclusive *easement* to erect wharves on the submerged lands, but did not convey fee title; therefore, intervenors had no standing to contest a trial court's decision denying intervenors a share of condemnation proceeds.

**2. Eminent Domain § 7.1— immediate possession of condemned land vesting in DOA as soon as DOA filed complaint**

Pursuant to G.S. § 136-104, title to condemned land and the right to immediate possession vests in the DOA as soon as the DOA has filed a complaint and declaration of taking and deposited with the court the estimated compensation; therefore, where intervenor first acquired a quitclaim deed almost two years after DOA had filed the requisite papers and deposited money in court, intervenor had no right to compensation and no right to intervene in the present action. G.S. 146-24(c).

**3. Eminent Domain § 14— insufficient findings as to area affected by taking**

In a condemnation case, where one of the issues raised by the pleadings was the area affected by the taking, the DOA was required to describe in its declaration of taking the area affected as well as the area taken, G.S. 136-103; therefore, the case must be remanded to the trial court for findings of fact and conclusions of law regarding whether three tracts constituted a single tract for the purposes of assessing condemnation damages. G.S. 136-112(1) and G.S. 1A-1, Rule 16.

APPEAL by defendant from *Battle, Judge.* Judgment entered 22 June 1982 in Superior Court, DARE County. Heard in the Court of Appeals 15 November 1983.

*Dwight H. Wheless and Battle, Winslow, Scott & Wiley, P.A., by Robert L. Spencer, for defendant appellant, Southhold Realty Corporation.*

*Pritchett, Cooke & Burch, by Stephen R. Burch and W. W. Pritchett, Jr., for defendant appellees, Forehand and Jones heirs, except J. Meredith Jones and wife, Elvira Jones.*

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen and Assistant Attorney General Roy A. Giles, Jr., for the State.*

BECTON, Judge.

I

Defendant, Southhold Realty Corporation (Southhold) appeals the trial court's denial of Southhold's land claim in a condemnation proceeding. We affirm.

Southhold, on 21 October 1981, filed a motion to intervene in an action by the North Carolina Department of Administration (DOA) to condemn a 3.799 acre tract adjacent to Jockey's Ridge

State Park. The condemned land borders Roanoke Sound on the west and Jockey's Ridge State Park on the east. The DOA had initiated condemnation proceedings on 5 December 1979 by filing a complaint and declaration of taking and by depositing with the court the estimated compensation. The only defendants named in the complaint, Forehand and the Jones heirs (the first group of defendants listed in the case on appeal), claimed title to the land by adverse possession. Southhold claimed title to a portion of the land based on a 1909 State grant No. 17495, to W. T. Greenleaf, for wharf purposes. The trial court allowed Southhold to intervene. Defendants Pool and McFadden subsequently intervened based on a 1903 State grant No. 16035 to W. T. Greenleaf. From a judgment in favor of Forehand, the Jones heirs, Pool and Mc-Fadden, Southhold appeals.

## II

Southhold brings forward six assignments of error. Because we find Southhold's deed void on its face to convey a fee title in land, Southhold has no standing to contest the trial court's decision. *State ex rel. N.C. Utilities Comm'n v. City of Kinston,* 221 N.C. 359, 20 S.E. 2d 322 (1942).

[1] Southhold presents the Court with an ingenious argument. The 1909 State grant No. 17495 to W. T. Greenleaf conveyed 33 acres of submerged lands "covered by water of Roanoke and Albemarle Sounds for (wharf purposes) and with straight lines with [Greenleaf's] grant No. 16035 dated 5 December 1903." State grant No. 16035 had conveyed 153½ acres of land on the shore of Roanoke Sound, contiguous with the submerged lands grant. Southhold now attempts to assert fee title to a 300-600 foot wide strip of the condemned land bordering on Roanoke Sound, which falls within the metes and bounds description of the submerged lands grant. Through natural processes the land is now above the high watermark. To recognize Southhold's claim, we would first have to conclude that the original grant for wharf purposes conveyed fee title to the submerged lands. We do not.

Almost since statehood, North Carolina policy has leaned towards a prohibition on the sale in fee simple of state lands under navigable waters. Earnhardt, *Defining Navigable Waters and the Application of the Public-Trust Doctrine in North Carolina: A History and Analysis,* 49 N.C. L. Rev. 888 (1971). North Carolina

has long accepted the public trust doctrine as set forth in *Illinois Central R.R. Co. v. Illinois*, 146 U.S. 387, 36 L.Ed. 1018, 13 S.Ct. 110 (1892). *See Shepard's Point Land Co. v. Atlantic Hotel*, 132 N.C. 517, 44 S.E. 39 (1903). Under the doctrine, the State holds title to the submerged lands under navigable waters, "but it is a title of a different character than that which it holds in other lands. It is a title held in trust for the people of the state so that they may navigate, fish, and carry on commerce in the waters involved." Schoenbaum, *Public Rights and Coastal Zone Management*, 51 N.C. L. Rev. 1, 17 (1972); *Shepard's Point Land Co.*

In *Shepard's Point Land Co.*, our Supreme Court construed an unconditional 1856 grant of submerged lands covered by navigable waters in light of the public trust doctrine, common-law riparian rights, and statutory law. A riparian owner owns the land adjacent to a natural watercourse. The Court held that such a grant conveyed an exclusive *easement* to a riparian owner to erect wharves on the submerged lands, but did not convey fee title to the submerged lands. The easement passed as appurtenant to the riparian land. Navigable waters included "any waters, whether sounds, bays, rivers or creeks, which are wide enough and deep enough for navigation of sea vessels." *Shepard's Point Land Co.*, 132 N.C. at 531, 44 S.E. at 43 (quoting *State v. Glen*, 52 N.C. 321, 325 (1859)).

The same law is applicable to Greenleaf's 1909 State grant No. 17495, for wharf purposes. In fact, the statute construed in *Shepard's Point Land Co.*, N.C. Code § 2751 (1854-55), as amended by 1893 N.C. Sess. Laws, ch. 17, and the holding in *Shepard's Point Land Co.* are now codified at N.C. Gen. Stat. §§ 146-3 and 146-12 (1983). We, therefore, hold that State grant No. 17495 merely conveyed an appurtenant easement to erect wharves to the riparian owner. Southhold's deed was void on its face to convey a fee title interest in the strip of land built up by natural processes above the high tide line.

III

Had the Greenleaf grant conveyed a fee title, Southhold's claim would still be barred on statutory grounds.

[2] N.C. Gen. Stat. § 146-24(c) (1983) empowers the DOA to employ the procedures in Article 9 of Chapter 136 of the General

Statutes to acquire land by condemnation. Pursuant to N.C. Gen. Stat. § 136-104 (1981), title to the condemned land and the right to immediate possession vests in the DOA as soon as the DOA has filed the complaint and declaration of taking and deposited with the court the estimated compensation. The right to just compensation vests in the person who owned the land or any compensable interest therein immediately before the filing of the complaint, the declaration of taking and deposit of the money in court. G.S. § 136-104; *N.C. State Highway Comm'n v. York Indus. Center, Inc.*, 263 N.C. 230, 139 S.E. 2d 253 (1964). That person has nothing he can sell pending ascertainment of just compensation. *York Indus. Center, Inc.*

The DOA filed the requisite papers and deposited the money in court on 5 December 1979. Title to the condemned land vested in the DOA immediately. Southhold first acquired an arguable interest in 16 September 1981 when it received a quitclaim deed. But, at that point, Southhold's grantor had nothing to convey. Consequently, Southhold had no right to compensation and no right to intervene in the present action.

We affirm the trial court's denial of Southhold's land claim.

## IV

[3] The State cross-assigns error to the breadth of the trial court's fact finding. We disagree and remand for additional findings of fact and conclusions of law.

Forehand and the Jones heirs presented evidence at trial as to their adverse possession of three contiguous tracts: tracts one and two and the home lot, as shown on the plat entitled "Land Claimed by Mrs. Myrtle A. Forehand . . .," prepared by D. R. Smith, R.L.S., 4 August 1978. Tract one represents the condemned land. The DOA failed to object to the evidence. The trial court found as fact that Forehand and the Jones heirs had adversely possessed all three tracts for over eighty years. The State argues that the pretrial order limited the trial court's fact finding to the "question of ownership of the tract condemned in this cause."

A pre-trial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

N.C. Gen. Stat. § 1A-1, Rule 16 (1983). N.C. Gen. Stat. § 136-108 (1981) provides that the trial court, in a condemnation proceeding "shall . . . hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of . . . title to the land . . . and area taken." One issue raised by the pleadings is the area affected by the taking. The DOA is required to describe in its declaration of taking the area *affected* as well as the area taken. N.C. Gen. Stat. § 136-103 (1981). N.C. Gen. Stat. § 136-112 (1981) clarifies the legislative intent behind G.S. § 136-103. G.S. § 136-112 provides, in pertinent part, that:

> The following shall be the measure of damages to be followed by the commissioners, jury or judge who determines the issue of damages:
>
> > (1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

To recover under G.S. § 136-112(1) the area affected and the area taken must constitute a single tract. Unity of ownership is an important criterion. *Board of Transportation v. Martin,* 296 N.C. 20, 249 S.E. 2d 390 (1978); *see also City of Winston-Salem v. Davis,* 59 N.C. App. 172, 296 S.E. 2d 21, *disc. review denied,* 307 N.C. 269, 299 S.E. 2d 214 (1982).

A determination of ownership of the area affected is a prerequisite to a determination of just compensation for the area taken. Limiting the trial court's factfinding to ownership of the area taken alone would deprive the defendants of just compensation. The State's right to exercise the power of eminent domain is "limited by the constitutional requirements of due process and the payment of just compensation for property condemned." *State v. Core Banks Club Properties, Inc.,* 275 N.C. 328, 334, 167 S.E. 2d 385, 388 (1969).

A valid exercise of the power of eminent domain presupposes a complete determination of the area affected, including ownership. Since the pre-trial order was erroneously prejudicial on statutory and constitutional grounds, the trial court correctly found facts as to the ownership of the affected tracts of land. These findings are necessary to determine just compensation.

We remand the case to the trial court for findings of fact and conclusions of law regarding whether the three tracts constituted a single tract for the purpose of assessing condemnation damages. The major factors for the trial court to consider are "unity of ownership, physical unity and unity of use." *Board of Transportation v. Martin,* 296 N.C. at 25, 249 S.E. 2d at 394 (quoting *Barnes v. N.C. State Highway Comm'n,* 250 N.C. 378, 384, 109 S.E. 2d 219, 224-25 (1959)).

V

We affirm as to defendant Southhold and remand for additional findings of fact and conclusions of law on the single tract requirement.

Affirmed in part and remanded.

Judges HEDRICK and WHICHARD concur.