NEUSE RIVER FOUNDATION, INC.; RICHARD J. DOVE; D. BOUTON BALDRIGE, D/B/A THE CAPE FEAR RIVERKEEPER; NEW RIVER FOUNDATION, INC.; TOM MATTISON, D/B/A THE NEW RIVERKEEPER; AND THE WATER KEEPER ALLIANCE, PLAINTIFFS v. SMITHFIELD FOODS, INC.; CARROLL'S FOODS, INC.; BROWN'S OF CAROLINA, INC.; MURPHY FARMS, INC.; WENDELL H. MURPHY, SR.; INDIVIDUALLY; WENDELL H. MURPHY, JR., INDIVIDUALLY; AND JOSEPH W. LUTER, III, DEFENDANTS

* * *

THOMAS E. JONES; BILL HARPER; MARY ANN HARRISON; NATALIE SALTER BAGGETT; DON WEBB; CHARLES ROGERS HUGHES; CRAIG CRUMPLER; SIDNEY WHALEY; MARGARET HANRAHAN JONES; DAVID LEE JONES; SETH AUSTIN WILLIS; ERIC MARK BLETTNER; FRED ROHDE; AND NEIL JULIAN SAVAGE, PLAINTIFFS v. SMITHFIELD FOODS, INC.; CARROLL'S FOODS, INC.; BROWN'S OF CAROLINA, INC.; MURPHY FARMS, INC.; WENDELL H. MURPHY, SR.; INDIVIDUALLY; WENDELL H. MURPHY, JR., INDIVIDUALLY; AND JOSEPH W. LUTER, III, DEFENDANTS

No. COA01-1204, COA01-1205

(Filed 31 December 2002)

**Environmental Law— hog farms—swine lagoons and sprayfields—standing**

The trial court did not err in a case seeking establishment of a court-approved trust to pay for the complete remediation of several of North Carolina's waterways as well as a prohibition of defendants' use of swine lagoons and sprayfields by granting defendants' motion to dismiss under N.C.G.S. § 1A-1, Rules 12(b)(1) and 12(b)(6) based on lack of standing, because: (1) there is no North Carolina authority supporting the contention that injury to aesthetic or recreational interests alone, regardless of degree, confers standing on an environmental plaintiff; (2) none of these plaintiffs seeks individual compensation of the invasion of a more particular and more personal right that cannot

be considered merged in the general public right; (3) the Court of Appeals cannot prohibit an activity that the legislature has legally allowed; (4) N.C.G.S. § 114-2(8)(a) provides that only the state, through the Attorney General, is authorized to bring in a representative capacity for and on behalf of the using and consuming public actions deemed to be advisable in the public interest; and (5) there is no allegation that eminent domain is an issue here.

Appeal by plaintiffs from orders entered 27 March 2001 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 20 August 2002.

Pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure and defendants' motion to consolidate, COA01-1204 and COA01-1205 are consolidated for appeal and we address both this opinion.

*Abrams & Abrams, P.A., by Douglas B. Abrams; Womble, Carlyle, Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., for plaintiff-appellants.*

*Ward and Smith, P.A., by Gary J. Rickner; McGuire Woods, LLP, by Anne Marie Whittemore; Cheshire, Parker, Schneider, Wells & Bryan, by Joseph B. Cheshire, V; and J. Phil Carlton for defendant-appellees.*

THOMAS, Judge.

Plaintiffs filed suit in these cases seeking two forms of relief. They ask for the establishment of a "Court Approved Trust" to pay for the complete remediation of several of North Carolina's waterways as well as a prohibition of defendants' use of swine lagoons and sprayfields.

Plaintiffs do not pray for individual compensation.

The trial court dismissed their claims under Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure, concluding "all plaintiffs lack standing to prosecute any claims before this Court, that this Court lacks subject matter jurisdiction as to any claims pending, and that the complaint fails to state a single claim upon which this Court by law is authorized to grant relief." Plaintiffs appeal, arguing a common law right to bring their causes of action.

For the reasons herein, we affirm the trial court.

Plaintiffs can be divided into five categories: (1) river associations, including The Neuse River Foundation, Inc., The New River Foundation, Inc., and the Water Keeper Alliance ("river associations"); (2) persons employed by nonprofit organizations as monitors of the rivers ("riverkeepers"); (3) noncommercial users of the rivers; (4) riparian landowners who are downstream from the alleged pollution; and (5) commercial users of the rivers.

They filed suit against three hog farming companies, the companies' corporate parent, and some of the current and former officers of the companies (collectively, "defendants"). Plaintiffs, represented by the same attorneys, were divided as litigants between two fundamentally similar actions against the same defendants. The hearing at the trial level was a consolidation of the two, as is this appeal.

Plaintiffs allege defendants improperly handled hog waste, resulting in massive pollution and contamination of the Neuse, New, and Cape Fear Rivers, and those rivers' tributaries and estuaries. Their claims are based on negligence, trespass, strict liability, public nuisance, unfair and deceptive trade practices, private nuisance and the public trust doctrine.

The complaints contain comprehensive background information regarding injury to North Carolina's coastal plain. One, for example, alleges:

> Largely as a result of Defendants' activities, [North Carolina's] coastal plain has experienced an explosion in its hog population as traditional North Carolina style family hog farming has given way to mass production pork factories first conceived and devised by Defendants.
>
> . . .
>
> A Tradition of Land Stewardship and Animal Husbandry is Lost—The family farmer traditionally spreads the manure of a few hundred hogs as fertilizer on the same crop land from which he derives produce to feed his herd. In accordance with traditions of good land stewardship, animal husbandry and agricultural practices, the family farmer maintained a relatively small herd of hogs in an area sufficient to accommodate the hog waste without significant contamination. Traditional farmers thus achieve a rough balance by assimilating the nutrients in hog waste[.]
>
> . . .

NEUSE RIVER FOUND., INC. v. SMITHFIELD FOODS, INC.

[155 N.C. App. 110 (2002)]

Defendant's hog farms quickly triumphed over family farmers in the market place.

. . .

Contaminated Lagoons—Whereas North Carolina hog farmers were once largely self-sufficient in producing and/or obtaining locally produced feed for their livestock on their own farms, Defendants' hog factories must import approximately 20,000 metric tons of feed each day from Midwestern grain producers.

. . .

The feces and urine of the hogs, instead of being purified through sewage treatment, fall through a slatted floor to a cellar below the warehouses which defendants periodically flush into open air earthen pits—euphemistically referred to as "lagoons."

The complaints go on to detail the harmful effects of the contamination and to request non-individualized, or public, forms of relief.

Plaintiffs now argue that such non-individualized forms of relief are appropriate and the trial court erred by finding they lack standing to pursue them. We disagree.

As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 364 (1992).

Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Id.* (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Id.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 111 L. Ed. 2d 695, 717 (1990)).

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002). Accordingly, defendants' standing argu-

ment implicates Rule 12(b)(1). *See Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). It is proper to conduct *de novo* review of a trial court's decision to dismiss a case for lack of standing. *Id.*

Standing is among the "justiciability doctrines" developed by federal courts to give meaning to the United States Constitution's "case or controversy" requirement. U.S. Const. Art. 3, § 2. The term refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter. *Sierra Club v. Morton*, 405 U.S. 727, 731-32, 31 L. Ed. 2d 636, 641 (1972). The "irreducible constitutional minimum" of standing contains three elements:

(1) "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61, 119 L. Ed. 2d at 364.

North Carolina courts are not constrained by the "case or controversy" requirement of Article III of the United States Constitution. Our courts, nevertheless, began using the term "standing" in the 1960s and 1970s to refer generally to a party's right to have a court decide the merits of a dispute. *See, e.g., Stanley, Edwards, Henderson v. Dept. of Conservation & Development*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973). Standing most often turns on whether the party has alleged "injury in fact" in light of the applicable statutes or caselaw. *See Empire Power Co. v. North Carolina Dep't of E.H.N.R.*, 337 N.C. 569, 447 S.E.2d 768 (1994); *Dunn v. Pate*, 334 N.C. 115, 119, 431 S.E.2d 178, 180 (1993); *Greene v. Town of Valdese*, 306 N.C. 79, 88, 291 S.E.2d 630, 636 (1982); *N.C. Forestry Ass'n v. North Carolina Dept. of Natural Resources*, 154 N.C. App. 18, 571 S.E.2d 602 (COA01-1329, filed 19 November 2002); *Ray Bergman Real Estate Rentals v. NCFHC*, 153 N.C. App. 176, 568 S.E.2d 883 (2002); *In re Ezell*, 113 N.C. App. 388, 392, 438 S.E.2d 482, 484 (1994); *Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 265 S.E.2d 890 (1980). Here, we must also examine the forms of relief sought. *See Friends of Earth, v. Laidlaw Env. S.*, 528 U.S. 167, 185, 145 L. Ed. 2d 610, 629 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought").

Prior to the utilization of the "standing" label by North Carolina's courts, our Supreme Court, in *Hampton v. Pulp Co.*, 223 N.C. 535, 27 S.E.2d 538 (1943), addressed whether a private party can maintain an action for damages caused by a public nuisance. According to the *Hampton* Court, it may be appropriate as long as the party has suffered an injury that "cannot be considered merged in the general public right[.]" *Hampton*, 223 N.C. at 543-44, 27 S.E.2d at 544. The *Hampton* Court held:

> [N]o individual may recover damages because of injury by public nuisance, unless he has received a special damage or unless the creator of the nuisance has thereby invaded some right which, upon principles of justice and public policy, cannot be considered merged in the general public right[.]

*Id.* The *Hampton* Court explained "[t]he real reason on which the rule denying individual recovery of damages is based . . . is that a purely public right is of such a nature that ordinarily an interference with it produces no appreciable or substantial damage[.]" *Id.* at 544, 27 S.E.2d at 544.

In *Hampton*, the injured riparian landowner asserted claims against an upstream manufacturing plant for trespass, damage to his fishing business, and diminution of his riparian property value due to the plant's pollution. The *Hampton* Court rejected a lack of standing argument:

> The law will not permit a substantial injury to the person or property of another by a nuisance, though public and indictable, to go without individual redress, whether the right of action be referred to the existence of a special damage, or to an invasion of a more particular and more important personal right. The personal right involved here is the security of an established business. The fact that plaintiff had such established antedating the nuisance, and that the injury had been done to this, takes him out of the rule and makes his damage special and peculiar.

*Id.* at 547, 27 S.E.2d at 545-46. Thus, "the existence of a special damage," is defined as the "invasion of a more particular and more personal right" that cannot be considered "merged in the general public right." *Hampton*, 223 N.C. 535, 27 S.E.2d 538. The more particular right in *Hampton* was the security of an established fishery business, as well as the (diminished) value of riparian property. *See also Biddix v. Henredon Furniture Industries*, 76 N.C. App. 30, 40, 331

S.E.2d 717, 724 (1985) (riparian landowner has standing to pursue damages to his property for wastewater discharge in violation of a state permit).

Under North Carolina law, an environmental plaintiff must allege: (1) injury to a protected interest that cannot be considered merged in the general public right; (2) causation; and (3) proper, or individualized, forms of relief. *See Hampton*, 223 N.C. 535, 27 S.E.2d 538; *see also Biddix*, 76 N.C. App. 30, 331 S.E.2d 717 (holding the General Assembly's omission of a citizen suit provision does not preempt common law claims of nuisance and continuing trespass for damage to riparian landowner's property caused by wastewater discharges in violation of state permit).

Plaintiffs here contend that since each of them either owns property adjacent to, works on, protects, or has concern for the welfare of the rivers allegedly polluted by defendants, they all suffer special damages to a degree different from those suffered by the general public. However, there is no North Carolina authority supporting the contention that injury to aesthetic or recreational interests alone, regardless of degree, confers standing on an environmental plaintiff. *See Hampton*, 223 N.C. at 542, 27 S.E.2d at 543 (emphasizing the difference between injury to a fishery business owner, who has standing in an action opposing the proposed location of a bridge on the river, and recreational anglers, who do not); *but see Sierra Club v. Morton*, 405 U.S. 727, 31 L. Ed. 2d 636 (under the Federal Water Pollution Control Act, which has a citizen suit provision, environmental plaintiffs adequately allege injury in fact when they claim that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity). The environmental river associations, riverkeepers, and recreational fishermen, therefore, do not have standing to maintain an action against defendants under the circumstances alleged.

Certain plaintiffs do claim injury to their riparian property or businesses. They include eight riparian landowners, two commercial fishermen, and a marina owner. These plaintiffs conceivably could have standing to pursue individual recovery under North Carolina law for injury to their "more particular and more important personal right[s]." *Hampton*, 223 N.C. at 547, 27 S.E.2d at 545. Here, however, none of these plaintiffs seeks individual compensation for the "invasion of a more particular and more personal right" that cannot be considered "merged in the general public right." *Id.* Defendants, in response, contend plaintiffs do not have standing to seek the forms of

relief sought. *See Friends of Earth, Inc.*, 528 U.S. at 185, 145 L. Ed. 2d at 629 ("a plaintiff must demonstrate standing separately for each form of relief sought"); *Lewis v. Casey*, 518 U.S. 343, 358, n.6, 135 L. Ed. 2d 606 622 (1996) ("[S]tanding is not dispensed in gross."); *Los Angeles v. Lyons*, 461 U.S. 95, 75 L. Ed. 2d 675 (1983) (notwithstanding the fact that the plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief). The issue for them becomes, therefore, whether they are seeking proper, or individualized, forms of relief.

In their prayer for relief, plaintiffs seek: (1) "[a] judgment prohibiting forthwith Defendant's use of sprayfields and cesspools;" and (2) monetary damages to be deposited in a court-approved trust for the "complete cost of . . . the restoration and remediation" of the rivers.

As to defendants' lagoon waste management systems, they exist pursuant to express legislative authority. *See* N.C. Gen. Stat. § 143-215.10A through 215.10M (2001). Under the separation of powers doctrine, "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. Art. I, § 6. "[C]ourts will not enjoin as a nuisance an action authorized by valid legislative authority[.]" *Twitty v. State of N.C.*, 527 F.Supp. 778, 781 (E.D.N.C. 1981) (refusing to enjoin the operation of a toxic waste dump); *see also Rope Co. v. Aluminum Co.*, 165 N.C. 572, 576, 81 S.E. 771, 772 (1914) (refusing to enjoin the operation of a dam constructed "under express legislative authority").

In creating a permitting program for animal waste management systems, the North Carolina General Assembly stated the following purpose:

The General Assembly finds that animal operations provide significant economic and other benefits to this State. The growth of animal operations in recent years has increased the importance of good animal waste management practices to protect water quality. It is critical that the State balance growth with prudent environmental safeguards. It is the intention of the State to promote a cooperative and coordinated approach to animal waste management among the agencies of the State with a primary emphasis on technical assistance to farmers. To this end, the General Assembly intends to establish a permitting program for animal waste management systems that will protect water quality

and promote innovative systems and practices while minimizing the regulatory burden. . . .

N.C. Gen. Stat. § 143-215.10A (2001). In regulating the location of swine lagoons, the General Assembly also stated:

> The General Assembly finds that certain limitations on the siting of swine houses and lagoons for swine farms can assist in the development of pork production, which contributes to the economic development of the State, by lessening the interference with the use and enjoyment of adjoining property.

N.C. Gen. Stat. § 106-801 (2001).

It is not the role of the judicial branch of government to pre-empt the legislative branch's policy considerations and appropriate authorization of an activity. Wisely, the citizens of this state have not granted judges wide latitude to dictate public policy. *See, e.g., Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 680, 562 S.E.2d 82, 89 (2002). It is critical for our purposes to remain focused on North Carolina's timeless separation of powers doctrine rather than be distracted by public policy debate embedded in any ephemeral issue of a case. To even weigh the benefits of result here is no different than weighing a political advantage or personal gain prior to making a decision. They must all be rejected.

Plaintiffs do not contend the General Assembly exceeded its authority in violation of our state's constitution. Were that the case, it would be incumbent on us to fully examine the issue as part of our independent governmental function. Under the circumstances here, we decline to prohibit an activity the legislature has legally allowed.

Plaintiffs also demand that defendants pay the complete cost of clean-up and remediation of the named public waters with the funds to be deposited into a court-approved trust. Clearly, a court may award monetary damages to a property owner where a nuisance or trespass has caused damage to the party's property. *Hampton*, 233 N.C. 535, 27 S.E.2d 538; *Biddix*, 76 N.C. App. 30, 331 S.E.2d 717. Here, however, no plaintiff seeks individual recovery. Plaintiffs merely measure damages by the "complete cost of . . . the restoration and remediation" of public waterways.

The state is the sole party able to seek non-individualized, or public, remedies for alleged harm to public waters. Under the public trust doctrine,

the State holds title to the submerged lands under navigable waters, "but it is a title of a different character than that which it holds in other lands. It is a title held in trust for the people of the state so that they may navigate, fish, and carry on commerce in the waters involved."

*State v. Forehand,* 67 N.C. App. 148, 151, 312 S.E.2d 247, 249 (1984) (citation omitted); *see also Idaho v. Couer d'Alene Tribe,* 521 U.S. 261, 138 L. Ed. 2d 438, (1997) (stating that "navigable waters uniquely implicate [a state's] sovereign interests"). Only the state, through the Attorney General, is authorized to bring "in a representative capacity for and on behalf of the using and consuming public of this State" actions deemed to be "advisable in the public interest." N.C. Gen. Stat. § 114-2(8)(a) (2001). The state's exclusive authority to regulate its public trust waters thus limits the private rights of riparian landowners bordering such waters, subjecting them "to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the protection of the public rights in rivers and navigable waters." *Jones v. Turlington,* 243 N.C. 681, 683, 92 S.E.2d 75, 77 (1956) (citation omitted).

Entire, or permanent damages, which are awarded for past, present, *and future* injury, are available only "[w]hen the defendant's right to continue the alleged nuisance or trespass is protected by its power of eminent domain, [so that] the remedy of abatement is not available to the landowner." *Wiseman v. Tomrich Construction Co.,* 250 N.C. 521, 524, 109 S.E.2d 248, 251 (1959). There is no allegation that eminent domain is an issue here. Plaintiffs' general prayer for "[a]ny other relief that the Court deems equitable and proper" does not, by itself, overcome the previously discussed deficiencies.

The trial court, therefore, properly granted defendants' motions to dismiss. There is no plaintiff here who has met the prerequisites of standing.

AFFIRMED.

Judges WYNN and McGEE concur.