Khan Bros., Inc. v. City of Charlotte, 2015 NCBC 23.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

KHAN BROTHERS, INC., d/b/a
DIAMOND CAB,

                    Plaintiff,

v.

CITY OF CHARLOTTE, a North
Carolina Municipal Corporation,
PATRICK CANNON, in his capacity as
Council member and Mayor for the City
of Charlotte and individually, THE
GREATER CHARLOTTE
HOSPITALITY AND TOURISM
ALLIANCE d/b/a HTA, TAXI USA, LLC
d/b/a YELLOW CAB, CROWN CAB
COMPANY, INC. and CITY CAB, LLC,

                    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 10933

**ORDER AND OPINION**

{1}    **THIS MATTER** is before the Court upon Defendants City of Charlotte ("City"), Patrick Cannon ("Cannon"), The Greater Charlotte Hospitality and Tourism Alliance ("HTA"), Taxi USA, LLC ("Yellow Cab"), Crown Cab Company, Inc. ("Crown Cab"), and City Cab, LLC's ("City Cab") (collectively, "Defendants") respective Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Motions") in the above-captioned case. After considering the Motions, briefs in support of and in opposition to the Motions, and the arguments of counsel at a hearing on January 9, 2015,[1] the Court hereby **GRANTS** the Motions solely on Rule 12(b)(1) grounds and **DISMISSES** Plaintiff's claims **with prejudice**.

*Thurman, Wilson, Boutwell & Galvin P.A. by James Galvin and Alexander W. Warner for Plaintiff Khan Brothers, Inc.*

---

[1] The Court heard the parties' arguments together with those of the parties in the companion case, *Universal Cab Co., Inc. v. City of Charlotte, et al.,* No. 14 CVS 10914. Contemporaneously with the entry of this Order and Opinion, the Court enters a separate Order and Opinion on the Motions filed in the *Universal Cab* case.

*Leila Z. Lahbabi, Theodore A. Kaplan, and Elizabeth E. Smithers for Defendants City of Charlotte and Patrick Cannon, in his official capacity.*

*Ferguson, Chambers & Sumter, P.A. by James E. Ferguson, II for Defendant Patrick Cannon, in his individual capacity.*

*Womble Carlyle Sandridge & Rice, LLP by Meredith J. McKee and Brandi N. Smith for Defendant Taxi USA, LLC.*

*Rabon Law Firm by Gary W. Jackson for Defendant Crown Cab Company.*

*Rawls, Scheer, Foster, Mingo & Culp, PLLC by Amanda A. Mingo for Defendant The Greater Charlotte Hospitality and Tourism Alliance.*

*McNaughton Law, PLLC by Edward J. McNaughton for Defendant City Cab, LLC.*

Bledsoe, Judge.

## I.

### PROCEDURAL AND FACTUAL BACKGROUND

{2} The Court limits its recitation of the background to the facts and allegations that are relevant for purposes of resolving the present Motions.

{3} Plaintiff Khan Brothers, Inc. d/b/a/ Diamond Cab ("Plaintiff") is a North Carolina corporation that provides taxi service in the Charlotte area. (Am. Compl. ¶ 1.)

{4} Defendants Yellow Cab, Crown Cab, and City Cab (collectively "the Cab Defendants") are also taxi service providers in the Charlotte, North Carolina area. (*See id.* ¶¶ 5–7.)

{5} Defendant City "is a municipal corporation organized under the laws of North Carolina" and owner and operator of Charlotte Douglas International Airport ("the Airport"). (*Id.* ¶ 2.) Defendant Cannon, at the times relevant to the causes of action, was "a member of the Defendant City's Council, the City's Mayor Pro Tem, chairman of the City's Community Safety Committee, and an HTA board member, and is made a defendant in both his individual and official capacities." (*Id.* ¶ 3.)

{6} Defendant HTA is a non-profit corporation with its principal place of business in Charlotte, North Carolina. (*Id.* ¶ 4.)

{7} Plaintiff filed its Complaint on June 13, 2014 in Mecklenburg County. This case was designated as a complex business case on July 14, 2014, assigned to this Court (Gale, J.) on July 21, 2014, and subsequently re-assigned to the undersigned on November 19, 2014.

{8} Plaintiff filed its Amended Complaint on August 8, 2014, alleging claims against Defendants in various combinations for breach of covenant of good faith and fair dealing, unfair and deceptive trade practices ("UDTP"), negligence, constructive fraud, monopolizing and attempting to monopolize – N.C. Gen. Stat. § 75-2.1 ("antitrust"), interference with contract, violation of the North Carolina Constitution Article I § 19 ("equal protection"), declaratory judgment, punitive damages, civil conspiracy, and violation of the Racketeer Influenced and Corrupt Organizations Act ("N.C. RICO"). (*Id.* ¶¶ 28–126.)

{9} The following allegations, drawn from the Amended Complaint, form the basis of Plaintiff's claims:

a. Prior to June 14, 2011, Plaintiff provided taxi service at the Airport pursuant to a Taxicab Operating Agreement. (*Id.* ¶ 12.) Only passenger vehicle companies with operating agreements are permitted to provide on-demand taxi service at the Airport. (*Id.* ¶ 11.) Because a majority of taxi rides originate from Airport taxi service, the ability to pick up passengers at the Airport is a "mainstay of income for passenger vehicle for hire companies in the City" and is essential for fair competition in Charlotte. (*Id.* ¶¶ 15, 17.)

b. Prior to and during June 2011, Defendants Cannon and HTA allegedly conspired to increase Yellow Cab's share of licenses for Airport taxi service. (*Id.* ¶ 29.) Yellow Cab members have donated "tens of thousands of dollars to campaigns for Patrick Cannon with the intent of getting him to use his public office and influence with the Airport to have Yellow Cab named as the only company with licenses to pick up at the Airport." (*Id.* ¶ 30.)

c. Cannon, HTA, and Yellow Cab convinced the Airport to seek a reduction in Airport taxi service providers. (*Id.* ¶¶ 31–32.) The City issued a

request for proposals ("RFP") from Airport taxi service providers who wished to continue providing service at the Airport. (*Id.* ¶ 33.)

d.   Plaintiff alleges that "HTA, Yellow Cab and Patrick Cannon agreed to facilitate a scheme whereby the right to operate at the Airport could be purchased by way of making campaign contributions to Patrick Cannon or providing 'membership dues' to HTA." (*Id.* ¶ 35.)

e.   "The City Council was the entity with the ultimate authority to enter into and approve the operating agreements with the three companies." (*Id.* ¶ 37.) The City Council tasked its Public Safety Committee with investigation and recommendation of Airport taxi service providers. (*Id.* ¶ 38.) Cannon chaired the Public Safety Committee at all relevant times. (*Id.* ¶ 39.)

f.   Mohammad Jenatian ("Jenatian"), the President of the HTA, and a representative of Cannon allegedly approached multiple cab companies and solicited contributions to HTA and Cannon's political campaign in exchange for agreements to provide Airport taxi service. (*Id.* ¶¶ 41–42.) Plaintiff did not contribute. (*Id.* ¶ 45.)

g.   The Cab Defendants "gave more money to HTA and to campaigns for Patrick Cannon than any other companies" (*Id.* ¶ 58) "in furtherance of [an] agreement to provide gifts/money to a public official in exchange for the award of a public contract." (*Id.* ¶ 59.)

h.   In June 2011, the City declined to award Plaintiff a new Taxicab Operating Agreement and granted exclusive Airport Taxicab Operating Agreements to Yellow Cab, Crown Cab, and City Cab. (*Id.* ¶ 23.) Plaintiff alleges the City's refusal to award Plaintiff a new Taxicab Operating Agreement was not in good faith. (*Id.* ¶ 24.)

i.   In May 2013, prior to the awarding of Taxicab Operating Agreements to the Cab Defendants, Plaintiff was again approached by Jenatian to contribute to HTA and Cannon's political campaign in exchange for Cannon's agreement to "use his position as Chair of the Public Safety committee to award the Airport contracts." (*Id.* ¶¶ 46–50.) Plaintiff again refused to contribute. (*Id.* ¶ 55.) The

City renewed its Taxicab Operating Agreements with the Cab Defendants in 2014. (*Id.* ¶ 25.)

j. Plaintiff alleges that "other employees and persons appointed by the City to take part in the process of awarding the Airport Contracts were also involved in the conspiracy to allow Patrick Cannon and HTA to ultimately pick who would be awarded the contracts." (*Id.* ¶ 62.)

k. Plaintiff alleges that "[t]he City's actions in depriving Plaintiff of the right to provide its services at the Airport stem from a process rife with corruption, bribes, and favoritism." (*Id.* ¶ 26.)

{10} Defendants filed their Motions to Dismiss between October 9, 2014 and October 13, 2014.[2] Plaintiff filed its Responses in Opposition to the Motions to Dismiss (the "Responses") on October 29 and 30, 2014. Defendants Crown Cab and Yellow Cab filed Replies to Plaintiff's Responses on November 10, 2014.

{11} The Court held a hearing on this matter on January 9, 2015, at which all parties were represented by counsel. The Motions are now ripe for resolution.

II.

ANALYSIS

{12} Defendants' Motions seek dismissal of Plaintiff's Amended Complaint pursuant to N.C.R.C.P. 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. Because Plaintiff's claims and the arguments supporting and opposing Defendants' Motions to Dismiss are substantially similar to the claims brought and the arguments supporting and opposing the Motions to Dismiss filed in *Universal Cab Co., Inc. v. City of Charlotte, et al.*, No. 14 CVS 10914, the Court relies heavily in this Order and Opinion on the analysis set forth in the Court's Order and Opinion in the *Universal* action (2015 NCBC 22) filed contemporaneously herewith.

{13} As "[s]tanding is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Neuse River Foundation v. Smithfield Foods, Inc.*, 155

---

[2] Defendant Cannon filed his Motion to Dismiss in his individual capacity at the hearing on January 9, 2015, largely adopting the arguments of the other Defendants. Defendant City Cab has not filed a Motion to Dismiss, but contended at the hearing that dismissal of any of the other Defendants warranted dismissal of City Cab.

N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002), the Court first addresses Defendants' Rule 12(b)(1) standing arguments. *See, e.g., In re T.B.*, 200 N.C. App. 739, 742, 685 S.E.2d 529, 531–32 (2009) (standing "is a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved.") (quotations omitted).

{14} "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." N.C.G.S. § 1A-1, Rule 12(h)(3) (2014). On a motion under Rule 12(b)(1), the Court may consider and weigh matters outside the pleadings in determining its subject matter jurisdiction. *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1987).

{15} "As the party invoking jurisdiction, plaintiff[] ha[s] the burden of establishing standing," *Queen's Gap Cmty. Ass'n, Inc. v. McNamee*, 2011 NCBC 36 ¶ 13 (N.C. Super. Ct. Sept. 23, 2011), www.ncbusinesscourt.net/opinions/11_NCBC_36.pdf (dismissing action for lack of standing) (quoting *Marriot v. Chatham Cnty.*, 187 N.C. App. 491, 494, 654 S.E.2d 13, 16 (2007)), by "show[ing] facts that if accepted as true would demonstrate the existence of jurisdiction." *Grasinger v. Williams*, 2015 NCBC 5 ¶ 16 (N.C. Super. Ct. Jan. 15, 2015), www.ncbusinesscourt.net/opinions/2015_NCBC_5.pdf (granting in part and denying in part motion to dismiss for lack of standing); *Am. Woodland Indus., Inc. v. Tolson,* 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002) ("The burden is on the plaintiff to demonstrate that the requirement of standing is satisfied.").

{16} The Court will only grant a Rule 12(b)(1) motion "'if the material jurisdictional facts are not in dispute and the moving party is entitled to a judgment as a matter of law.'" *Wilkie v. Stanley*, 2011 NCBC 11 ¶ 7 (N.C. Super. Ct. Apr. 20, 2011), www.ncbusinesscourt.net/opinions/2011_NCBC_11.pdf (denying motion to dismiss for lack of standing).

{17} In *Neuse River Foundation*, our Court of Appeals set out a three-step process for determining a plaintiff's standing to assert a claim: (1) "'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized and

(b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." 155 N.C. App. at 113, 574 S.E.2d at 51 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

{18} Defendants contend that Plaintiff cannot satisfy the second element required to establish standing: an injury fairly traceable to Defendants' alleged conduct. Specifically, Defendants assert that the Charlotte City Council was the body with the sole authority to approve contracts for Airport taxi service, and, as such, any injury suffered by Universal on the facts as alleged was the result of the votes of at least eight independent members of the eleven-member City Council, none of whom are defendants or are alleged to have acted improperly or illegally in voting to award the Taxicab Operating Agreements to the Cab Defendants.[3]

Causal Connection between Plaintiff's Injury and Defendants' Conduct

{19} An injury is fairly traceable to the challenged conduct when a causal connection exists "between the injury and the conduct complained of" and the injury is "not . . . the result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560; *see, e.g.*, *Hamm v. Blue Cross & Blue Shield of N.C.*, 2010 NCBC 14 ¶ 34 (N.C. Super. Ct. Aug. 27, 2010), www.ncbusinesscourt.net/opinions/2010_NCBC_14.pdf ("For an injury to be fairly traceable to the challenged action of the defendant, it must not be the result of the independent action of a third party not before the court.").

{20} Here, Plaintiff's claimed injury is the lost profits Plaintiff alleges it would have realized had the City elected to award Plaintiff a new Taxicab Operating Agreement for service at the Airport. Plaintiff seeks to hold Defendants liable for this economic loss by alleging that Defendants implemented the RFP process using

---

[3] The City Council approved the Taxicab Operating Agreements with the Cab Defendants by a nine-to-two vote, with Defendant Cannon voting in the majority.

illegal and wrongful means, with the intended result that Plaintiff not be awarded a new Agreement.

{21} The Court concludes, however, that Plaintiff's allegations establish that a causal connection does not exist between the alleged injury about which Plaintiff complains and Defendants' alleged conduct. Although Plaintiff has alleged that Defendants engaged in numerous nefarious and wrongful acts that caused Plaintiff's loss, it is undisputed that the decision that caused Plaintiff's alleged injury was the eleven-member Charlotte City Council's decision not to award Plaintiff a new Taxicab Operating Agreement. (Am Compl. ¶ 37.) Indeed, Plaintiff admits that "[t]he City Council was the entity with the ultimate authority to enter into and approve the operating agreements with the three companies." (*Id.*)

{22} The only member of the eleven-member City Council that Plaintiff has sued or contends acted wrongfully in casting his or her vote in connection with the Taxicab Operating Agreements is Defendant Cannon. Plaintiff attempts to create the requisite causal connection by alleging in conclusory fashion that "[t]he City Council tasked its Public Safety Committee with investigation and recommendation of Airport taxi service providers," (*Id.* ¶ 38), and that Defendant Cannon agreed to "use his position as Chair of the Public Safety [C]ommittee to award the Airport contracts" to those taxi companies that purchased corporate memberships in HTA and contributed to Cannon's political campaign. (*Id.* ¶¶ 46–50.)

{23} Plaintiff, however, does not allege any facts or offer any evidence to support its conclusory assertions concerning the City Council's alleged deference to Cannon or the Public Safety Committee in awarding the Agreements. Plaintiff's conclusory allegations are not sufficient to survive a challenge under Rule 12(b)(1). *See Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51 ("Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."); *Venable v. GKN Automotive*, 107 N.C. App. 579, 584, 421 S.E.2d 378,

381 (1992) (affirming 12(b)(1) dismissal where plaintiff's allegations were "conclusory in nature"); *see also, e.g., Burgess v. Charlottesville Sav. & Loan Ass'n*, 477 F.2d 40, 43 (4th Cir. 1973) ("Mere conclusory allegations in the complaint are insufficient to support jurisdiction.").

{24} Plaintiff has not alleged or offered evidence that any Councilmember, other than Defendant Cannon, received bribes or other unlawful inducements from any Defendant, and Cannon is the only Councilmember Plaintiff has elected to sue. Plaintiff has not alleged or offered evidence that the City Council vote to approve the Agreements was improper, illegal or invalid, or that any member of the City Council, other than Defendant Cannon, acted with any ill will, malice or improper motive against Plaintiff or had any improper connection to any Defendant.

{25} Furthermore, the *quid pro quo* agreements Plaintiff alleges involved payments of money by the Cab Defendants to HTA and Defendant Cannon, neither of whom, Plaintiff admits, made the decision to approve or deny the Taxicab Operating Agreements.

{26} Similarly, Plaintiff alleges that Defendant Cannon controlled the City Council's Community Safety Committee, but it is undisputed that Cannon could cast only one of the five votes on the Committee, and Plaintiff does not allege or offer any evidence that any of the other members of the Committee received unlawful inducements to cast their votes for the Cab Defendants or that the Committee's vote was illegal or improper.

{27} In sum, Plaintiff has not alleged facts, or offered any evidence that shows, that the decision by the Charlotte City Council to award the Taxicab Operating Agreements to the Cab Defendants and to decline to award Plaintiff a new Agreement was the result of anything other than the independent action of the Charlotte City Council, consistent with its legal authority, and acting within its reasonable discretion, to approve or deny the Agreements. Consequently, the Court concludes, based on the allegations and evidence of record, that the alleged injury about which Plaintiff complains – *i.e.,* the economic losses flowing from the City Council's decision not to award Plaintiff a new Taxicab Operating Agreement – was

caused by the independent, legal and valid action of the Charlotte City Council and not by the improper actions of any Defendant.

{28} Because Plaintiff therefore has not shown a causal nexus between its alleged injury and Defendants' alleged conduct, Plaintiff does not have standing to bring its claims. *See, e.g., AMOCO v. AAN Real Estate, LLC*, 754 S.E.2d 844, 846 (N.C. Ct. App. 2014) (dismissing for lack of standing where "the amended complaint did not sufficiently show that plaintiff suffered an injury as a result of the alleged lease breach by defendant"); *McCracken & Amick, Inc. v. Perdue*, 218 N.C. App. 455, 721 S.E.2d 455 (2012) (unpublished) (dismissing claims on Rule 12(b)(1) grounds because injury "still cannot be traced to and does not arise out of the challenged conduct"); *see, e.g., Credigy Receivables, Inc. v. Whittington*, 202 N.C. App. 646, 658, 689 S.E.2d 889, 897 (2010) (affirming award of attorneys' fees under N.C.G.S. § 6-21.5 where plaintiff had no standing to bring suit because it failed to connect defendant to bad debt); *see also, e.g., Frank Krasner Enters. v. Montgomery Cnty.*, 401 F.3d 230, 235 (4th Cir. 2005) ("We have previously denied standing because the actions of an independent third party, who was not a party to the lawsuit, stood between the plaintiff and the challenged actions.").

Actual or Imminent Injury v. Conjectural or Hypothetical Injury

{29} The Court further concludes that there also exist intervening factors, that Plaintiff ignores, which the Court finds preclude a conclusion on the facts alleged that Plaintiff has suffered an "actual or imminent, not conjectural or hypothetical" injury sufficient to establish standing. *See Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51 (identifying standard). In particular, Plaintiff ignores the presence of the other losing bidders in the RFP process and simply assumes it would have been awarded a contract but for Defendants' allegedly wrongful acts. It is undisputed, however, that Plaintiff was competing not only against the Cab Defendants, but also against five additional competitors for one of the three available Taxicab Operating Agreements. It is simply a matter of speculation and conjecture that Plaintiff would have been awarded a new Taxicab Operating Agreement had Defendants' alleged misconduct not occurred. Similarly, given

Plaintiff's attack on the RFP process itself, it is also a matter of speculation and conjecture how the process would have been structured but for Defendants' alleged misconduct, and further, whether Plaintiff would have been selected through these unknown, yet-to-be-determined, alternative procedures.

{30} As a result, it appears to the Court that but for Defendants' alleged misconduct, Plaintiff's bid would have been one of presumably nine bids (assuming all nine bidders and no others elected to respond to any revised selection process not "controlled" by HTA or Cannon) that would have been evaluated under discretionary criteria by the City Council, the eleven members of which would rely upon their own individual subjective assessments of the bidders' relative qualifications, experience, written and oral presentations, and overall ability to provide the best taxi service at the Airport, in casting their votes to approve the awarding of the Taxicab Operating Agreements. The Court cannot conclude that Plaintiff's likely success in this speculative alternative scenario is sufficiently certain to warrant a finding that Plaintiff has suffered an "actual or imminent" injury under prevailing precedent.

{31} To the contrary, on the facts here, the Court concludes that Plaintiff's alleged injury is merely "conjectural or hypothetical" and cannot support Plaintiff's standing to assert its claims. *See, e.g., In re Ezzell*, 113 N.C. App. 388, 393, 438 S.E.2d 482, 485 (1994) (dismissing claims for lack of standing because alleged injury was "conjectural or hypothetical" where plaintiff magistrate contended alternative removal process without involvement of district attorney would have yielded different result); *Beachcomber Props., LLC v. Station One, Inc.*, 169 N.C. App. 820, 825, 611 S.E.2d 191, 194 (2005) (dismissing claims for lack of standing where alleged injury was "conjectural or hypothetical" because plaintiff was "without a legally protected interest in the property" at issue); *see generally Strates Shows, Inc. v. Amusements of America, Inc.*, 379 F. Supp. 2d 817 (E.D.N.C. 2005) (dismissing NC RICO claim for failure to show proximate causation where plaintiff was not selected in allegedly corrupt competitive bidding process involving administrative discretion and multiple bidders).

{32} Accordingly, for the reasons set forth above, the Court concludes that Plaintiff's claims should be dismissed with prejudice for lack of subject matter jurisdiction. *See, e.g., AMOCO*, 754 S.E.2d at 845 ("A party that lacks standing to bring a claim constitutes an insurmountable bar to recovery.").

III.

CONCLUSION

{33} For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motions to Dismiss under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure and **DISMISSES** Plaintiff's claims against all Defendants **with prejudice**.

{34} In light of the Court's determination that it does not have subject matter jurisdiction over this action, the Court does not reach or consider Defendants' Motions to Dismiss for failure to state a claim under N.C.R.C.P. 12(b)(6).


**SO ORDERED**, this the 5th day of March 2015.