## 10250

### SAVANNAH GUANO CO. v. FOGLE.

#### (100 S. E. 59.)

1. TRIAL—INTRODUCTION OF WRITTEN INSTRUMENT—ORDER OF PROOF.—Where defendant set up an instrument in his answer as a basis of counterclaim plaintiff had the right to introduce it in anticipation of the defense without recognizing it as a binding contract, to show that defendant had acknowledged in writing that such instrument was not to be a binding contract until approved by an executive officer of the plaintiff corporation, and that there had been no contract growing out of previous communications between the parties.

2. EVIDENCE — PAROL — ADMISSIBILITY. — Where defendant set up an instrument in his answer as a basis of a counterclaim which contained a provision that it would not be a binding contract until approved by executive officer of plaintiff, and that there had not been a contract growing out of previous communications between the parties, and, upon proof that such contract had not been approved, undertook to shift his ground and prove a previous oral contract, testimony as to the previous oral contract was incompetent on the ground that the defendant had admitted that previous negotiations were merged in the proposed contract.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—BURDEN OF PROOF.—The burden was on customer of a guano company to prove that a sales agent of the company was authorized to agree that the company would sell fertilizer to the customer if he would pay what money he could on note then due on fertilizer sold him the previous year, and that the company would carry the balance of the indebtedness for the prior year.

4. SALES—CONSIDERATION.—Payment of a part of an existing debt for fertilizer previously bought was no consideration for a contract to sell the debtor more fertilizer.

5. CONTRACTS—AGREEMENT TO MAKE CONTRACT IN FUTURE.—A party is not liable in damages for refusing to make a contract, even though he has promised to do so, when the terms of the contract have not been agreed upon.

Before TOWNSEND, J., Orangeburg, Spring term, 1918. Affirmed.

Action by the Savannah Guano Company against B. T. Fogle. Judgment for plaintiff, and defendant appeals.

*Messrs. Moss & Lide* and *John F. Williams,* for appellant. *Mr. Williams* submits: *"A contract may be formed by accepting a paper containing terms. If an effort is made by delivering to another a paper containing the terms of a proposed contract, and the paper is accepted, the acceptor is bound by its terms, and this is true as a rule whether he reads the paper or not."* 13 C. J., p. 277. *We allege fraud and because this contract came into the inquiry several months after inquiry was begun, it was not necessary for us to allege the matters in the answer concerning this contract, in order to introduce testimony touching it:* 85 S. C. 128. *"An oral agreement is merged in a subsequent written one only where the written agreement is executory on both sides * * * when damages have accrued through breach of a verbal agreement, and there be no waiver or disclaimer of such breach in a subsequent writing, an action will lie on the verbal agreement notwithstanding the subsequent writing."* 13 C. J., p. 598. *"A valid verbal contract is not destroyed or affected by an attempt to execute an invalid written one in its stead, and a written instrument cannot take the place of and supersede a parol contract until the writing has been mutually adopted by the parties as an instrument embodying the terms of the agreement."* Ibid. *"While a written contract merges into itself all prior parol negotiations with reference to that contract, it does not merge all other contracts actually entered between the par—*

*ties, although relating to the same property:" Ib. The action is not on the contract itself, but on the breach:* 39 S. C. 484.

*Messrs. E. B. Friday* and *Raysor & Summers,* for respondents (oral argument).

July 15, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The Chief Justice is mistaken in saying that plaintiff put in evidence the instrument which was relied upon by defendant as the basis of his counterclaim. The record shows that plaintiff introduced only the notes suéd on. While the instrument was in plaintiff's possession, as explained in the opinion of the Chief Justice, and was carried to Court and produced by plaintiff, the record shows that nothing was said about it until it was brought out on cross-examination of plaintiff's witnesses, and it appears in the record under the head of "Defendant's Exhibits."

However, it is of no consequence whether it was put in evidence by plaintiff or defendant. For when defendant set up that instrument in his answer, as the basis of his counterclaim, plaintiff had the right to introduce it, in anticipation of the defense (however doubtful might be the policy of undertaking to disprove an adversary's case, in advance of his making out a *prima facie* case), without recognizing it as a binding contract, but merely to show that defendant had acknowledged in writing that it was not to be a binding contract until approved by an executive officer of the company, and that there had been no contract growing out of the previous communications, oral or written, between the parties. Subsequent events showed the wisdom of inserting that provision, for, although defendant sets it up as the basis of his counterclaim, when it became perfectly clear that it had not been approved by an executive officer of the company and defendant had been

promptly notified, as he was, that it would not be approved, and was not, therefore, a contract, defendant undertook to shift his ground and prove a previous oral contract, and that is the testimony to which plaintiff's attorney (Mr. Friday) objected.   The testimony was admitted, though it was subsequently ruled incompetent, on the ground that defendant had admitted that all previous negotiations were merged in the proposed contract, and, therefore, there was no other contract for the breach of which plaintiff was liable.   That ruling was correct.   But even if it should be conceded that defendant's testimony was competent to prove a previous contract, which was not merged in the written proposal, it utterly fails to prove one.   He says nothing more than that Mr. Condon, plaintiff's sales agent, told him in March that, if he would pay what money he could on the notes then due for the fertilizer sold him in 1914, he would sell him fertilizer for 1915, and carry the balance of the 1914 indebtedness, and that he promised to come back in a week or ten days and take his order for the fertilizer for 1915, but never did so.   Was that a contract?   Certainly not.

In the first place, though it appears that Mr. Condon was only a sales agent, there was not a particle of testimony tending to prove that he had any authority to make such an agreement, and clearly the burden was upon defendant to prove that he had such authority.

Second, there was no consideration for it.   Payment of a part of an existing debt then due was no consideration for the alleged contract, for in making the payment defendant did only what he was bound in morals and in law to do.   He had no legal or moral right by withholding payment to attempt to coerce plaintiff into financing his speculation in holding his cotton for a better price. Plaintiff had furnished him the fertilizer to make the cotton, and it was his duty to pay the debt, when it became due, without regard to the price of cotton.

Third, defendant's own testimony shows that there was no contract, but only a promise to make one. Can a party be mulcted in damages for refusing to make a contract, even though he has promised to do it, when the terms of the contract have not been agreed upon? Until the terms have been agreed upon, there can be no contract. Here no terms were specified or agreed to. The parties had not agreed as to the quantity of fertilizers to be furnished, the brand or quality, the price thereof, the time within which it should be furnished, or the time of payment, or the security to be given. Not a single element of a valid contract was proved.

Fourth, if all the necessary elements of such a contract had been proved, it would have been obnoxious to the statute of frauds, which says:

"No contract for the sale of any goods, wares and merchandise for the price of fifty dollars or upwards shall be allowed to be good except the buyer shall accept part of the goods so sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereto lawfully authorized."

It follows that the judgment is right, and ought to be affirmed.

Judgment affirmed.

MESSRS. JUSTICES WATTS, FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY, *dissenting*. This is an action upon two promissory notes. The defendant set up a counterclaim for damages alleged to have been sustained on account of the failure of the plaintiff to furnish certain fertilizers in accordance with the terms of the contract between the said parties. The appeal is from an order directing a verdict in favor of the plaintiff.

The plaintiff introduced in evidence the following instrument of writing:

"7. This contract, to be binding upon us, must be approved by one of the executive officers of this company. All previous communications between us, either written or verbal, with reference to the subject matter of this contract, are hereby abrogated, and no statements or representations on your part, or of any agent of yours, or of any agent of ours, nor any modification of this agreement, shall be binding upon us, or either of us, unless the same shall be in writing duly accepted by you and approved by an executive officer of this company.

"For own use—You are to give us a security for the payment of this fertilizer, and also as security for the payment of your two notes, dated April 7, 1915, for $196.50, due Sept. 15, 1915, and Oct. 1, 1915, for $196.89, which are renewals of my 1914 notes, a lien on your crop of cotton and cotton seed to be planted by you on 50 acres of land, Goodland township, Orangeburg county, S. C., belonging to D. A. Thaxton and known as the Brodie place; this lien being subject to rental of $100.00   Yours truly, Savannah Guano Co. (in print), per J. J. Condon.   Approved: To B. T. Fogle, Springfield, S. C.   Savannah Guano Company, Savannah, Ga.   I accept your contract on the terms set forth in the foregoing.   (The above in duplicate.)   B. T. Fogle."

When the said instrument was offered in evidence by the plaintiff, the name of B. T. Fogle was not on it, as this signature had been cut off by the plaintiff and returned to him, but the plaintiff kept the agreement.

The following is the testimony of the defendant, B. T. Fogle, also the rulings of his Honor, the presiding Judge:

"I operated a farm during 1914 and 1915 of about five horses, and bought fertilizer during the former year from the respondent, through his salesman, Mr. Conlon; my entire transaction being with him, having given him my order, and

the respondent having shipped the goods.    I gave him a note for 1914.    I made plenty of cotton, but could not get any sale for it, selling a few bales at 5 and 6 cents a pound.    I tried to give him cotton for·my account, but he refused it and came to see me, towards the end of the year. · I had the cotton in the warehouse, and he told me that, if I would pay· him what money I could from the sale of my cotton, he would sell me fertilizer for 1915 and carry the balance of my 1914 account.    This arrangement was made before I paid him any money.    Pursuant to this, and relying upon it, I paid him $280 or $240.

"Q. What was your arrangement with Mr. Conlon at that time?    A. I told Mr. Conlon that I would not be able to pay him the whole amount, but that I was going to pay him what I could, and he said to pay him what I could and he would carry the rest over, and furnish me fertilizer the next year.· Mr. Friday: We object; I don't think that would be competent, unless he shows Mr. Conlon's connection with the company, and that he had authority· to make these arrangements.    The Court: He has shown· that Mr. Conlon is a salesman.    Mr. Friday: He is testifying here to an oral contract.    Mr. Lide: Mr. Conlon was the only agent that he knew as representing the company.    The question of agency would be a question for the jury.    The Court: I think that question might be a question for the jury.    The contract that you put in about the sale of fertilizer is a contract in writing.    Mr. Summers: That is a contract in writing between the parties and would be competent.    Q. When was this conversation with Mr. Conlon?    A. That was in March. The Court: It seems to me that, when this agreement was reduced to writing, that would be the contract.    Mr. Lide: The witness testified that he told Mr. Conlon that he would raise all the money that he could, and Mr. Conlon then said that he would let him have the fertilizer.    The Court: I think that the contract was reduced to writing, and that is the only thing to be considered here.    In that view the testi-

mony would have to be excluded as incompetent. He says that this was in March before the written agreement, and all these agreements were done away with by the written contract. Mr. Lide: The point that we wanted to get at was that this April contract was the result of this agreement that they had in March. * * * The Court: Whatever agreement they had was done away with and merged in this written contract. * * * Mr. Williams: We want to show that he told him that he would sell him the fertilizer. The Court: I think that might tend to contradict the terms of the written contract."

A the conclusion of the testimony, his Honor, the presiding Judge, said:

"Mr. Foreman and gentlemen of the jury, a motion has been made in this case asking the Court to direct a verdict on the ground that there are no issues of fact in the case which you are to pass upon. Under the view that I take of the testimony and evidence which has been introduced, there is only one conclusion to be drawn from the testimony as to the amount due by the defendant to the plaintiff upon the notes sued upon and the amount sued upon in these two notes is $537.52. The right of the defendant to recover upon his counterclaim depends upon the construction placed by the Court upon the written contract or order for sale of fertilizer dated April 13, 1915, and, under the view that I take of the case and of this contract, it is necessary for the defendant to show that this written order or contract was approved by one of the executive officers of the company before the defendant can recover upon his counterclaim. I find no testimony in the case tending to show that this contract or order of April 13, 1915, was ever approved by any executive officer of the plaintiff company, and I, therefore, direct you to find a verdict for the plaintiff for the sum of $522.13."

The defendant appealed upon the following exceptions:

First. "His Honor erred, it is respectfully submitted, in ruling that conversations and negotiations and transactions leading up to the giving of the order for the feritilizer were inadmissible; whereas, he should have held that they were not contradictory, and that they were pertinent, especially when the answer pleaded that the entire scheme on the part of the agent and representatives of the plaintiff was advised, for the purpose achieved, knowingly, and that such conduct was negligent, wilful, and fraudulent, the cause of action presented in the counterclaim being not only for the failure to furnish the fertilizer, but based upon representations of the plaintiff's agents that the fertilizer would be furnished, the defendant was misled to his injury, appellant having contracted with the agent within the apparent scope of his authority for the fertilizer."

Second. "His Honor erred, it is respectfully submitted, in holding that the oral contract merged into the written application, and that the oral agreement could not be established; whereas, he should have held that the question of the oral agreement and the misrepresentation and deception as to the entire transaction were questions for the jury, and should have been submitted."

Third. "His Honor erred, it is respectfully submitted, in directing a verdict on the ground that there was no testimony for the jury; whereas, he should have submitted the case to the jury, and allowed them to pass upon the issues raised by the pleadings, especially so when the testimony developed the issues of waiver, fraud, and agency."

Mr. Friday, the plaintiff's attorney, interposed the following objection to the testimony of the plaintiff:

"We object. I don't think that would be competent unless he shows Mr. Conlon's connection with the company, and that he had authority to make these arrangements."

His Honor, the Circuit Judge, did not sustain this objection, but excluded the testimony on the ground that whatever previous agreement the parties may have had was done

away with and merged in the written contract. The written contract was introduced in evidence by the plaintiff, who made use of it for the purpose of destroying the previous agreement between the parties. The plaintiff thus recognized it as a binding and existing contract, thus enabling the defendant also to rely upon those provisions that conferred rights upon him. After the contract had subserved the plaintiff's purpose, the plaintiff could not change front and ask for a nonsuit, on the ground that it had not approved the contract, and that it was, therefore, a nullity.

When his Honor, the Circuit Judge, reached the conclusion that the contract was without force and effect, the defendant had the right to rely upon the previous agreement unless there was some other objection to it.

For these reasons, I dissent.