721 S.E.2d 455

STEVENS & WILKINSON OF SOUTH CAROLINA, INC., Gary Realty Company, Inc., Garfield Traub Development, LLC, and Turner Construction Company, Plaintiffs,

Of Whom Stevens & Wilkinson of South Carolina, Inc., Gary Realty Company, Inc., and Garfield Traub Development, LLC are, Appellants,

v.

CITY OF COLUMBIA, Paul C. "Bo" Aughtry, III, Windsor/Aughtry Co., Inc., Vista Hotel Partners LLC, and Hilton Hotels Corporation, Defendants,

Of Whom City of Columbia is, Respondent.

No. 4914.

Court of Appeals of South Carolina.

Heard Sept. 13, 2011.
Decided Nov. 30, 2011.
Rehearing Denied Jan. 27, 2012.

Kenneth M. Suggs and Francis M. Hinson, IV, both of Columbia, for Appellants Gary Realty Company, Inc. and Garfield Traub Development, LLC.

Richard A. Harpootlian and Graham L. Newman, both of Columbia, for Appellant Stevens & Wilkinson of South Carolina, Inc.

Michael W. Tighe, D. Reece Williams, III, Kathleen M. McDaniel, and Richard C. Detwiler, all of Columbia, for Respondent.

FEW, C.J.

The City of Columbia entered into a Memorandum of Understanding (MOU) with members of a development team in preparation for the construction of a hotel near the Columbia Metropolitan Convention Center. When the City gave the project to another team approximately one year later, some members of the original development team filed suit against the City for breach of the MOU and other causes of action. The City made a motion for summary judgment contending the MOU is not a contract, and the circuit court granted the motion. We find the circuit court erred in ruling as a matter of law that the MOU is not a contract.[1] We reverse and remand for trial. We also reverse summary judgment on a quantum meruit claim. We affirm summary judgment on a promissory estoppel claim.

## I.  Facts

In January 2001, the City sought requests for qualifications to develop, build, and operate a hotel near the Convention Center. In December 2002, City Council selected a team to develop the hotel. The team chosen consisted of three developers, Garfield Traub Development, Gary Realty Company,

---

1. This issue is raised in two appeals from the same order. Accordingly, we consolidate the appeals pursuant to Rule 214, SCACR.

and Edens & Avant Real Estate Services; architecture firm Stevens & Wilkinson; Turner Construction Company; Hilton Hotels Corporation; and bond underwriter Salomon Smith Barney. The team proposed a 300–room, full-service Hilton Hotel. It planned to publicly finance the hotel using bonds that would be paid with hotel revenue, subsidized by the City if necessary.

After choosing the development team, the City hired a consulting company to negotiate and draft the MOU. In April 2003, the City and the team signed the MOU. The MOU begins by reciting the following language: "[I]n consideration of the foregoing and the mutual promises contained herein, and other valuable consideration the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows." The MOU called on the team members and the City to perform various tasks. It provided the City would purchase and prepare land for the hotel site, form a non-profit corporation to own the land, and issue "approximately $60 million" in hotel revenue bonds. Meanwhile, the development team was to complete certain work, such as plans, drawings, and financial models, that would enable Turner Construction to calculate a guaranteed maximum price for the hotel construction.

The MOU also required the parties to negotiate numerous agreements over the course of developing the hotel. The MOU recited some of the basic elements these future agreements would contain. These written agreements were to be executed at the bond closing. The bonds were set to close on October 13, 2003. If the bonds failed to close "as a result of the City not meeting its obligations outlined in the Development Agreement, or as a result of an unforeseen catastrophic event not caused by any of the [ ][t]eam, the City [would] reimburse the [ ][t]eam for actual, documented costs." However, the MOU also stated that "[n]otwithstanding anything herein to the contrary, if the City determines that it is not feasible to proceed with the Hotel project it shall have no liability under this MOU."

The City and the development team performed in accordance with the MOU for over a year. In June 2003, the City filed articles of incorporation for the Columbia Convention Center Hotel Corporation. By July 2003, Stevens & Wilkin-

son completed the architectural plans necessary for bond closing. At this point, Stevens & Wilkinson had performed architectural work valued at approximately $1.2 million.

The bonds did not close in October 2003 as planned. By February 2004, the non-profit corporation's board of directors and the development team set April 1, 2004, as the new date for the bond closing. At the same time, the board approved an increased total project cost of over $71 million, and Ambac Assurance issued a Commitment for Financial Guaranty Insurance for over $63 million in bonds to the City.

During this time the Windsor/Aughtry Company expressed to City Council its desire to build a privately funded hotel instead of the development team's publicly funded hotel. In March 2004, City Council voted to issue a second request for proposals for the hotel. By that time, the cost of the development team's plan had risen to over $72 million. The City never determined whether the team's plan was feasible and never directed the team to stop its work on the project.

In response to the City's new request for proposals, the development team submitted two proposals for Hilton Hotels.[2] One was a resubmission of its original publicly financed proposal. The other was a new proposal for the hotel to be partially funded by the City and partially privately funded. Windsor/Aughtry submitted a proposal for a privately funded hotel with an estimated cost of $26 million. Its proposal allowed the City a choice of a Hilton Garden Inn or a Marriot Courtyard. Later, at the City's request, Windsor/Aughtry offered to build a Hilton Hotel if the City paid an additional $3 million. The City chose Windsor/Aughtry's proposal.

## II.  Procedural History

Stevens & Wilkinson, Garfield Traub, and Gary Realty brought suit against the City alleging breach of contract based on the MOU. Stevens & Wilkinson also brought a cause of action for promissory estoppel. Garfield Traub and Gary Realty also sought recovery based on quantum meruit. The City filed motions for summary judgment as to all three causes of action. In a consolidated order, the circuit court

---

2.  Edens & Avant did not take part in the second request for proposals.

granted the City's motions. The court determined there was no genuine issue of material fact as to the existence of a contract, making the issue a matter of law for the court to decide. The court found the MOU was not a contract because it stated the parties' intention to proceed in good faith toward executing definitive agreements that would bind the parties. The court also found the parties did not agree on material terms and the MOU did not resolve disputed issues, such as executive compensation and whether the hotel would pay property taxes.

### III.  Whether the Circuit Court Erred in Ruling as a Matter of Law That the MOU is Not a Contract

■  Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. When there is conflicting evidence on some material issue, the court may not grant summary judgment. *See Shirley's Iron Works, Inc. v. City of Union,* 387 S.C. 389, 397, 693 S.E.2d 1, 4 (Ct.App.2010) ("At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." (internal quotation marks omitted)).  "If the evidence as to the existence of a contract is conflicting or raises more than one reasonable inference, the issue should be submitted to the jury." *Armstrong v. Collins,* 366 S.C. 204, 223, 621 S.E.2d 368, 377 (Ct.App.2005); *see also Small v. Springs Indus., Inc.,* 292 S.C. 481, 483, 357 S.E.2d 452, 454 (1987) (same). Viewing the evidence in the light most favorable to the plaintiffs, we find disputed facts that permit more than one inference as to whether the parties intended the MOU to be a contract.

To explain that evidence exists to support the plaintiffs' claim that the parties intended the MOU to be a contract, we consider the plaintiffs' theory of the case. Their theory begins with the premise that the City needed significant work done before it could determine whether financing, building, and operating the hotel was feasible. The plaintiffs argue the MOU contains a mutual exchange of promises between the City and the team members to perform the various tasks necessary for the City to eventually make this determination of feasibility. Under this theory, Stevens & Wilkinson, Gar-

field Traub, and Gary Realty agreed to perform the work allocated to each of them in the MOU in exchange for the promises made by the other parties, particularly the City. The plaintiffs argue these promises include the City's promise to actually make the determination of feasibility, and to do so in good faith.

The MOU provides evidence supporting this theory. For example, the City needed detailed architectural plans from Stevens & Wilkinson and a guaranteed maximum price from Turner Construction before it could submit the hotel plan to a bond underwriter. The MOU contains Stevens & Wilkinson's promise to prepare the architectural plans. Stevens & Wilkinson contends it made that promise in exchange for, or in consideration of, the City's various promises, including its promise to acquire and prepare the land for the hotel site. The MOU also contains promises made by Garfield Traub and Gary Realty, supporting the plaintiffs' theory that all the promises were given as consideration for each other. *See Sauner v. Pub. Serv. Auth.*, 354 S.C. 397, 405, 581 S.E.2d 161, 166 (2003) ("A bilateral contract . . . exists when both parties exchange mutual promises.").

The MOU contains other promises the plaintiffs argue were made in consideration of each other, including the following:

- The City promised to reimburse the development team's expenses out of "Hotel Revenue Bond proceeds" in exchange for the team's promise to expend substantial effort to design a feasible hotel.

- The developers promised to "coordinate design . . . of the Hotel" prior to the execution of any other contracts in exchange for the right to do the development work on the hotel and the promise of a fee of 4.75% of the project budget.

- Stevens & Wilkinson promised to prepare hotel plans in exchange for the right to complete the architectural work on the hotel and the promise of a fee of 7.25% of the "hard construction costs" and Turner Construction's "general expenses and fees."

- Hilton promised to "contribute $1.5 million in the form of [a] . . . loan" in exchange for the right to operate the hotel

for fifteen years under a Qualified Management Agreement.

Based on the existence of these promises in the MOU, it is reasonable to infer that the plaintiffs would not have agreed to do their work unless the City made these promises, and that the City made the promises in order to induce the plaintiffs to perform the work.

There is other evidence to support the plaintiffs' claim that the MOU is a contract. First, the parties chose to use the classic contract language "in consideration of the foregoing and the mutual promises contained herein, and other valuable consideration the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows." The MOU also contains provisions excluding liability for certain actions. For example, the MOU states, "[I]f the City determines that it is not feasible to proceed with the Hotel project it shall have no liability under this MOU." The exclusion of liability under one circumstance is some evidence the parties intended there to be liability under the MOU in other circumstances. Additionally, Garfield Traub submitted affidavits from three of its employees stating they intended the MOU to be a contract and "never would have agreed to put in the effort necessary to develop the Hotel if [they] did not consider the MOU to form a contract." Thus, the evidence permits the reasonable inference that the parties entered the MOU with the intent to create a contract.

There is also evidence to support the City's theory that the MOU is not a contract, but instead was merely a nonbinding framework for the development stage of the project. This theory is based on the premise that the parties would be bound in the future by the written agreements contemplated by the MOU, not by the MOU itself. The MOU also supports this theory, as it refers to numerous agreements that were to be negotiated after the parties signed the MOU. For example, the Qualified Management Agreement mentioned in the MOU needed to be executed before the bonds could close, and the Design–Build Agreement was to include the agreed-upon construction costs, which would ultimately determine the amount each member of the development team would be paid.

The City cites various cases to support its claim that the MOU is not a contract because it contemplated future agreements. At oral argument, however, the City conceded that a preliminary agreement that contemplates a future agreement could be a contract, depending on the facts and circumstances surrounding the transaction. Here, the plaintiffs allege a breach of the MOU, not a breach of a future contract committing them to build the hotel. As noted above, there is evidence in the facts and circumstances surrounding the MOU that supports a reasonable inference that the MOU was a contract.

Moreover, each of the cases the City cites is distinguishable from this case because none involves facts and circumstances supporting a reasonable inference that the preliminary arrangement was a contract. In each case cited by the City, the plaintiff sued for a breach of the final contract the parties never reached, not for a breach of a preliminary agreement. *See Electro–Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 369–70, 593 S.E.2d 170, 173–74 (Ct.App.2004) (finding general contractor's use of subcontractor's estimate in bid, later request for subcontractor's bond rate, and fax stating subcontract was forthcoming did not amount to a contract because these communications "were merely preliminary negotiations"); *Trident Constr. Co. v. Austin Co.*, 272 F.Supp.2d 566, 575–76 (D.S.C.2003) (finding no oral contract when the plaintiff alleged the defendant told it if the defendant won the bid to build an airplane hangar, it would give the plaintiff the supplier subcontract, because the parties never agreed on price); *Blanton Enters., Inc. v. Burger King Corp.*, 680 F.Supp. 753, 768–70, 773 (D.S.C.1988) (finding no oral franchise agreement because "the parties intended to be bound only after plaintiff had received the requisite written approvals and they had reduced their agreement to a signed writing"); *Savannah Guano Co. v. Fogle*, 112 S.C. 234, 238, 100 S.E. 59, 60 (1919) (finding no contract for the plaintiff to sell the defendant fertilizer and carry his indebtedness forward to the next year because the parties had not agreed on quantity, price, delivery, or payment); *Holliday v. Pegram*, 89 S.C. 73, 81–82, 71 S.E. 367, 370 (1911) (finding the parties' correspondence concerning the lease of a tobacco warehouse did not

amount to a contract because the language of the letters was provisional).

Rather than focusing on whether the MOU calls for the parties to reach future agreements, the proper inquiry is to determine whether the MOU meets the elements of a contract. Because evidence exists to support the plaintiffs' theory that it does since it contains mutually binding promises the parties intended to be a contract, we find the circuit court erred in holding as a matter of law that the MOU is not a contract. Accordingly, we reverse the circuit court's decision to grant summary judgment on the question of whether the MOU is a contract.

### IV. Garfield Traub and Gary Realty's Quantum Meruit Claim

■ Garfield Traub and Gary Realty argue the circuit court erred in granting summary judgment for the City on their quantum meruit cause of action. We agree.

■ To recover on a claim for quantum meruit, a plaintiff must establish three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 616–17, 703 S.E.2d 221, 225 (2010). Focusing on the first element, the circuit court found the team's plans, drawings, financial models, construction estimates, and expertise had no intrinsic value and did not benefit the City. Based solely on that element, the circuit court granted summary judgment for the City. We do not believe it is possible to rule as a matter of law that the alleged benefit to the City had no value. Therefore, we reverse the circuit court's decision to grant summary judgment on this element of the quantum meruit claim.

### V. Stevens & Wilkinson's Promissory Estoppel Claim

■ Finally, Stevens & Wilkinson argues the circuit court erred in granting summary judgment on its promissory estoppel cause of action. We disagree.

■ To recover for promissory estoppel, a plaintiff must prove the following: (1) a party made a promise unambiguous in its terms; (2) the party to whom the promise is made reasonably relied on the promise; (3) the reliance was expected and foreseeable by the party who made the promise; and (4) the party to whom the promise is made sustained injury in reliance on the promise. *Woods v. State*, 314 S.C. 501, 505, 431 S.E.2d 260, 263 (Ct.App.1993).

The promise Stevens & Wilkinson argues is unambiguous, and therefore meets the first element of promissory estoppel, is in the MOU. Consequently, this court must interpret the promise as it appears in the MOU. Because the MOU provides that the promise is contingent, it cannot be an unambiguous promise to pay. The promise is this statement: "The Architect is to be paid a fee of 7.25% ... based on hard construction costs...." The same paragraph in which that statement is made contains a contingency which provides that Stevens & Wilkinson would receive its fee only if bond financing closed. Therefore, Stevens & Wilkinson bore the risk of non-payment. The MOU also provides that if bond financing did not close, Stevens & Wilkinson could recover its documented out-of-pocket expenses only if financing fell through due to either the City's breach of the Development Agreement, which was never executed, or an unforeseen catastrophic event not caused by a member of the team. Even if any of these scenarios triggering payment occurred, the City would not be required to pay Stevens & Wilkinson if the City determined moving forward with the project was infeasible.

To the extent Stevens & Wilkinson claims the promise is unambiguous, it cannot deny the clarity of the contingency. It is not possible to read the MOU as requiring payment of the fee except on the occurrence of a contingency all parties agree never occurred. Therefore, the circuit court correctly found that the MOU does not contain an unambiguous promise by the City to pay Stevens & Wilkinson. Thus, we affirm the circuit court's decision to grant summary judgment on the promissory estoppel claim.

## VI. Conclusion

We reverse the circuit court's decision to grant summary judgment for the City on the issue of whether the MOU is a

contract. We remand for a jury to make that determination. We also reverse the circuit court's decision to grant summary judgment as to Garfield Traub and Gary Realty's quantum meruit claim. We affirm summary judgment as to Stevens & Wilkinson's promissory estoppel claim.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

THOMAS and KONDUROS, JJ., concur.