Wirth v. Sunpath, LLC, 2017 NCBC 82.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 517

PETER WIRTH, Individually and as
Owner of SUCCESSIONS, LLC,

        Plaintiff,

v.

SUNPATH, LLC; ALONZO A.
MORROW, II; TRACI SCOTT
MORROW; and LATRICE MIGNON
HOGUE,

        Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS**

1.    **THIS MATTER** is before the Court on Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) (the "Rule 12(b)(1) Motion") and Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (the "Rule 12(b)(6) Motion") (collectively, the "Motions") filed on April 3, 2017.  Having considered the Motions, the briefs, and the arguments of counsel at a hearing on the Motions, the Court **GRANTS** the Rule 12(b)(1) Motion, and **DENIES** the Rule 12(b)(6) Motion as untimely.

*Newkirk Law Office, by Robert B. Newkirk, III, for Plaintiff.*

*Tuggle Duggins, P.A., by Charles K. Blackmon, Brandy L. Mills, and Benjamin P. Hintze, for Defendants.*

Robinson, Judge.

## I.    PROCEDURAL HISTORY

2.    The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

3.     Plaintiff Peter Wirth ("Plaintiff" or "Wirth") initiated the current action on January 6, 2017 by filing a Complaint and a Motion to Enforce Arbitration Agreement (the "Complaint") against Sunpath, LLC ("Sunpath") and Alonzo A. Morrow, II, Traci Scott Morrow, and Latrice Mignon Hogue (collectively, the "Individual Defendants"). (ECF No. 1.)

4.     This case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated March 9, 2017, (ECF No. 6), and assigned to the undersigned by order of Chief Business Court Judge James L. Gale dated March 10, 2017, (ECF No. 7).

5.     On March 14, 2017, Defendants filed their Answer.  (ECF No. 8.)

6.     On April 3, 2017, Defendants filed the Motions.  (ECF Nos. 12, 15.)

7.     The Motions have been fully briefed, and the Court held a hearing on the Motions on June 6, 2017.  The Motions are now ripe for resolution.

## II.     FACTUAL BACKGROUND

8.     The Court does not make findings of fact on the Motions, but only recites those facts that are relevant and necessary to the Court's determination of the Motions.

### A.     The Parties

9.     Successions, LLC ("Successions") was a certified critical access behavioral health agency ("CABHA") engaged in providing behavioral health treatment services in Mecklenburg County, North Carolina.  (ECF No. 1 at ¶ 17.)  Wirth was the sole owner of Successions until he sold his membership interest on July 23, 2012.  (ECF

No. 1 at ¶ 3; Defs.' Br. Supp. Mot. Dismiss Rule 12(b)(1) Ex. B, ECF No. 14.) Successions was administratively dissolved by the North Carolina Secretary of State in 2015.  (ECF No. 1 at ¶ 4.)

10.    Sunpath is a limited liability company engaged in providing behavioral health treatment services in Gaston County, North Carolina.  (ECF No. 1 at ¶¶ 6, 18.)  The Individual Defendants are former members of Sunpath.  (*See* ECF No. 1 at ¶ 37.)

**B.    <u>Successions and Sunpath Execute a Letter of Intent to Merge</u>**

11.    On January 9, 2012, Successions and Sunpath executed a Letter of Intent ("LOI") contemplating that the two companies would "merge all of the tangible properties and assets of each party relating to and necessary to run the businesses of each."  (Compl. Ex. A at ¶¶ 2.1−2.2, ECF No. 18.)

12.    The LOI set a closing date of January 9, 2012, "or at a time convenient to all parties."  (ECF No. 18 at Ex. A, ¶ 2.2.)  The parties contemplated completion of the merger by April 30, 2012.  (ECF No. 18 at Ex. A, ¶ 2.3.)

13.    Pursuant to the LOI, the parties intended "to move all consumers who have consented to such a transfer to the care of the surviving entity, which is expected to be Sunpath, LLC or a successor[.]"  (ECF No. 18 at Ex. A, ¶ 2.4.)  Additionally, "Successions or its successor" would be entitled to 40% of Sunpath's or the new entity's net profits.  (ECF No. 18 at Ex. A, ¶ 2.4(b).)

14.    The LOI further provided that the parties were to "execute an Operating Agreement for the new entity or execute documents to amend the Operating

Agreement for the surviving entity to reflect the distribution plan outlined herein[.]"

(ECF No. 18 at Ex. A, ¶ 2.4(f).)

15.    The LOI additionally states:

Successors.  This Agreement inures to the benefit of and shall be binding on each of the parties hereto or any of them, their respective representatives and successors; provided however, this Agreement and the rights and obligations hereunder shall not be assignable by any Party without written consent of all Parties.  Which [sic] consent will not be unreasonably withheld.

(ECF No. 18 at Ex. A, ¶ 11.5.)

16.    The LOI was signed on behalf of Successions by Wirth and on behalf of Sunpath by Defendant Latrice Mignon Hogue.  (ECF No. 18 at Ex. A, 4.)

17.    Plaintiff alleges that by March 2012, Successions completed the transfer of all of its consumers to Sunpath.  (ECF No. 1 at ¶ 22.)  In the affidavit filed by Plaintiff, Wirth testifies that he "believe[s] the client transfer was completed by April 30, 2012." (Br. Opp'n Defs.' 12(b)(1) Mot. Ex. A, at ¶ 4, ECF No. 25.)

**C.    Plaintiff Sells His Membership Interest in Successions**

18.    On July 23, 2012, Wirth entered into a Membership Interest Purchase Agreement pursuant to which Wirth sold his interest in Successions to two individuals who are not parties to this action in exchange for $125,000.  (ECF No. 1 at ¶ 23; ECF No. 14 at Ex. B, ¶ 1.2.)  Pursuant to the agreement, the closing of this transaction occurred on the same day as the execution of the agreement—July 23, 2012.  (ECF No. 14 at Ex. B, 6–7.)

19.    The Membership Interest Purchase Agreement stated:

At the Closing, Buyers will be added as Members of [Successions] with

a 100% Membership Interest. Seller shall remain as a Manager of [Successions]. Ninety (90) days after the Closing, Seller shall execute an amendment to the Operating Agreement removing himself as a Manager of [Successions] after the Closing date. Buyers shall receive all profits from Company Operations, which will be reflected on all tax filings for 2012.

(ECF No. 14 at Ex. B, ¶ 1.3.)

### D. Sunpath Terminates the LOI and Plaintiff Files Suit

20. On February 24, 2013, Sunpath's prior counsel informed Successions' counsel by mail that Sunpath was terminating the LOI, alleging that Successions failed to fulfill its contractual obligations. (ECF No. 18 at Ex. B.)

21. Plaintiff initiated an action against Defendants on June 2, 2014 by filing a complaint (the "2014 Complaint") in Mecklenburg County, North Carolina, Civil Action Number 14 CVS 10182. (ECF No. 1 at ¶ 13.)

22. On January 8, 2016, Plaintiff voluntarily dismissed the 2014 Complaint pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure ("Rule(s)"). (ECF No. 1 at ¶ 14.)

23. Plaintiff filed the instant action on January 6, 2017, asserting claims individually and derivatively on behalf of Successions for breach of contract, misrepresentation, fraudulent transfer of assets, civil conspiracy, unfair and deceptive trade practices ("UDTP"), and enforceable arbitration. (ECF No. 1 at 5–10.)

### III. RULE 12(b)(6) MOTION

### A. Legal Standard

24. Rule 12(b) of the North Carolina Rules of Civil Procedure expressly provides

that a Rule 12(b)(6) motion "shall be made before pleading if a further pleading is permitted." N.C. Gen. Stat. § 1A-1, Rule 12(b). This Court previously held "a Rule 12(b) motion to dismiss for failure to state a claim must be filed prior to an answer[,]" regardless of whether the answer asserts a motion to dismiss for failure to state a claim. *New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72, at *24 (N.C. Super. Ct. Aug. 18, 2017). There, defendant filed an answer asserting a defense for failure to state a claim, and then filed a separate Rule 12(b)(6) motion and brief three days later. *Id.* Because the motion and brief were filed after the answer, this Court held that the motion was untimely. *Id.*

25. Additionally, Rule 7.2 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR") provides that all motions "must be accompanied by a brief" and "must be set out in a separate document." BCR 7.2. Where a motion is not accompanied by a required brief, the Court may summarily deny the motion. *Id.*

26. However, a failure to file a Rule 12(b) motion for failure to state a claim before filing a responsive pleading does not waive the defense, but rather the party may raise the defense pursuant to Rule 12(h)(2). *New Friendship Used Clothing Collection, LLC*, 2017 NCBC LEXIS 72, at *17. Rule 12(h)(2) provides that such a defense, when not raised prior to filing an answer, "may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." N.C. Gen. Stat. § 1A-1, Rule 12(h)(2). In recently interpreting North Carolina's Rule 12(b), this Court looked to Fourth Circuit and

North Carolina federal district court decisions holding that, under the Federal Rules of Civil Procedure, an untimely Rule 12(b)(6) motion may be construed as a Rule 12(c) motion for judgment on the pleadings. *New Friendship Used Clothing Collection, LLC*, 2017 NCBC LEXIS 72, at \*21–22. This Court concluded that "a post-answer Rule 12(b) motion to dismiss for failure to state a claim may, if appropriate, be considered as a Rule 12(c) motion for judgment on the pleadings." *Id.* at \*24.

**B.     Timeliness of Defendants' Rule 12(b)(6) Motion**

27.     Here, Defendants filed their Answer on March 14, 2017. (ECF No. 8.) In their Fourth Affirmative Defense, Defendants asserted that Plaintiff's Complaint is subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted. (ECF No. 8 at 9.) On April 3, 2017, nearly three weeks after filing the Answer, Defendants filed their Rule 12(b)(6) Motion and accompanying brief. (ECF Nos. 15–16.) Because Defendants did not file their Rule 12(b)(6) Motion before they filed an answer, the Motion is untimely and should be dismissed. The Court, in its discretion, declines to construe Defendants' Motion as a Rule 12(c) motion for judgment on the pleadings, and therefore denies Defendants' Rule 12(b)(6) Motion.

## IV.     RULE 12(b)(1) MOTION

**A.     Legal Standard**

28.     "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002). Standing arguments may be presented under

both Rule 12(b)(1) and Rule 12(b)(6).  *Fairfield Harbour Prop. Owners Ass'n, Inc. v. Midsouth Golf, LLC*, 215 N.C. App. 66, 72, 71 S.E.2d 273, 280 (2011).  In determining a motion to dismiss for lack of standing, the allegations should be taken as true and read in the light most favorable to the non-moving party.  *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008).  In ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists.  *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009).  Plaintiff has the burden of proving that he has standing to bring his claims.  *Neuse River Found., Inc.*, 155 N.C. App. at 113, 574 S.E.2d at 51.

29.     Standing refers to a party's right to have the Court decide the merits of its dispute.  *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52.  The elements of standing are

> (1) "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560−61 (1992)).

30.     In order to have standing to assert a derivative claim on behalf of an LLC, plaintiff must either be "a member of the LLC at the time of the act or omission for which the proceeding is brought" or acquire his ownership interest "by operation of law from an ownership interest that was owned by a member at that time."  N.C. Gen. Stat. § 57D-8-01(a)(1).  In addition, the member must "[make a] written demand

on the LLC to take suitable action," and then must either (i) receive notice from the LLC that its demand was rejected, (ii) wait ninety days from the date the demand was made, or (iii) allege that the LLC would be irreparably harmed by waiting for the expiration of the ninety-day period. *Id.* § 57D-8-01(a)(2).

31.    In considering whether a member of an LLC has standing to assert an individual claim, "members of an LLC are treated like corporate shareholders and managers are similar to directors." *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at *14–15 (N.C. Super. Ct. Dec. 7, 2015); *see also* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 34.04[5] (7th ed. 2016) ("A derivative action on behalf of an LLC will be governed by essentially the same rules that apply to a derivative action on behalf of a corporation. Therefore, whether the member must bring the suit individually or on behalf of the LLC turns on whether the alleged injuries were caused directly to the member or are a consequence of breaches of fiduciary duty that harmed the LLC." (footnote omitted)).

32.    It is a well-settled principle of North Carolina law that a shareholder of a corporation cannot pursue individual causes of action for wrongs or injuries to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); *Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 338 (N.C. Ct. App. 2016). There are two exceptions: (1) when there is a special duty between the wrongdoer and the shareholder; and (2) when the shareholder suffered an injury separate and distinct from the injury suffered by the corporation and the other shareholders. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219; *Corwin*, 796 S.E.2d at 338.

33.     For the special duty exception to apply, "the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual"—a duty that was personal to the shareholder and separate and distinct from the fiduciary duty owed to the corporation. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220.  Plaintiff Wirth does not argue that the special duty exception applies to his claims.  Therefore, the Court does not analyze his claims on that basis.

34.     For the special injury exception to apply, the injury must be peculiar or personal to the shareholder. *Id.*  "[A] plaintiff must show that its particular injury was 'separate and distinct from the injury sustained by the other shareholders or the corporation itself.'" *Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 702 (N.C. Ct. App. 2016) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219).  "An injury is peculiar or personal to the shareholder if a legal basis exists to support plaintiff['s] allegations of an individual loss, separate and distinct from any damage suffered by the corporation." *Barger*, 346 N.C. at 659, 488 S.E.2d at 220 (quotation marks omitted).

### B.     Wirth's Standing

35.     The Rule 12(b)(1) Motion seeks dismissal of Plaintiff's claims on the ground that Plaintiff lacks standing because all of the claims are derivative claims belonging to Successions.  (Defs.' Br. Supp. Mot. Dismiss Rule 12(b)(1) at 4, ECF No. 13.) Plaintiff contends that he has standing to bring his claims as the successor of Successions or as a third-party beneficiary of the LOI.  (Br. Opp'n Defs.' 12(b)(1) Mot. at 3, ECF No. 24.)

### 1. Plaintiff's Derivative Claims

36. It is not clear which claims, if any, Plaintiff asserts derivatively on behalf of Successions. The Court concludes, however, that Plaintiff lacks standing to bring any derivative claims on behalf of Successions.

37. Plaintiff lacks standing to bring claims on behalf of Successions because Plaintiff has not alleged that he made an appropriate demand on Successions to take suitable action, as required by N.C. Gen. Stat. § 57D-8-01(a)(2). "A party's standing to bring a derivative claim depends on whether they properly meet the demand requirement." *Petty v. Morris*, 2014 NCBC LEXIS 67, at *4 (N.C. Super. Ct. Dec. 16, 2014); *see also Marriott v. Chatham Cty.*, 187 N.C. App. 491, 494, 654 S.E.2d 13, 16 (2007) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." (quotation marks omitted)). Although Successions was administratively dissolved on February 2, 2015, (ECF No. 1 at ¶ 4), "[t]he dissolution of the LLC does not prevent commencement of a proceeding by or against the LLC in its own name," N.C. Gen. Stat. § 57D-6-07(f). Successions must bring these claims on its own behalf, or they must be brought by a person who was a member at the relevant times after a proper demand.

38. Putting aside whether Plaintiff was a member of Successions at the time of the alleged wrongdoing, because Plaintiff fails to allege that he made the requisite pre-suit demand on Successions, Plaintiff lacks standing to bring claims as "owner of Successions," and the Rule 12(b)(1) Motion to Dismiss Plaintiff's derivative claims, if any, is granted.

## 2.     Plaintiff's Direct Claims

39.     Plaintiff also appears to assert direct claims for breach of contract, misrepresentation, conspiracy, fraudulent transfer of assets, and UDTP.  (ECF No. 1.)

40.     Because Wirth's direct claims for misrepresentation, civil conspiracy, and UDTP are based on wrongs to Successions, in order to have standing Wirth must allege that (1) Defendants owed him a special duty or (2) that Plaintiff suffered an injury separate and distinct from any injury suffered by successions.  *Barger*, 346 N.C. at 658, 488 S.E.2d at 219.

41.     Plaintiff does not allege that Defendants owed him a special duty; thus, he only has standing to assert direct claims if he suffered a separate and distinct injury. The Complaint alleges that "Plaintiff has suffered damages in excess of $1 million" including "lost profit distributions[,]" "lost benefits (or the value of the benefits)[,]" and "lost revenue due from the sale of SUNPATH[.]"  (*See* ECF No. 1 at ¶¶ 44, 52, 60, 65, 73.)

42.     Plaintiff's factual allegations that he suffered an injury focus almost exclusively on the transfer of clients from Successions to Sunpath, (ECF No. 1 at ¶¶ 22, 50; ECF No. 24 at 4–5), an injury to Successions.  The lost profit distributions and lost revenue from the sale of Sunpath were injuries to Successions, the party to the LOI that was entitled to such distributions and revenue.  Although Plaintiff alleges that after Sunpath terminated the LOI, "SUNPATH terminated certain benefits previously available to WIRTH, including healthcare coverage[,]" (ECF No.

1 at ¶ 26), neither the LOI nor anything in the record demonstrates that Wirth or Successions was entitled to receive any benefits such as healthcare coverage. Therefore, the Court concludes that Wirth has not alleged a separate and distinct injury that would grant him standing to bring these direct claims. For these reasons, Defendants' Rule 12(b)(1) Motion should be granted as to those claims.

43. Plaintiff also asserts a direct claim for fraudulent transfer of assets, alleging the Individual Defendants sold Sunpath to a third-party buyer, (ECF No. 1 at ¶ 37), "for inappropriate purposes, including, but not limited to, transferring the assets so that Plaintiff would have a more difficult time in collecting on his claim of ownership interest in Sunpath[,]" (ECF No. 1 at ¶ 55).

44. The Uniform Voidable Transactions Act ("UVTA"), formerly the Uniform Fraudulent Transfer Act ("UFTA"), allows a creditor to bring a civil action against a debtor for certain transfers made by the debtor. N.C. Gen. Stat. § 39A-23.7; *see also McKee v. James*, 2013 NCBC LEXIS 33, at *39 (N.C. Super. Ct. July 24, 2013). Under the UVTA, a creditor is a person who has a claim, N.C. Gen. Stat. § 39-23.1(4), which is further defined as a "right to payment[,]" N.C. Gen. Stat. § 39-23.1(3). Thus, "[a] plaintiff must have standing as a creditor to proceed with a claim under the UVTA." *Transatlantic Healthcare, LLC v. Alpha Constr. of the Triad, Inc.*, 2017 NCBC LEXIS 21, at *21 (N.C. Super. Ct. Mar. 9, 2017).

45. Reading the facts in the record in the light most favorable to Plaintiff, Plaintiff is not a "creditor" for purposes of the UVTA. The LOI was executed between Successions and Sunpath and expressly provided that distributions from the

surviving entity were to be distributed to Successions or its successor. (ECF No. 18 at Ex. A, ¶ 2.4(b), (d).) Because Plaintiff has not alleged sufficient facts to demonstrate that he is the successor of Successions' entitlement to any such payments, any right to payment that exists under the LOI belongs to Successions. Because Plaintiff is not a "creditor" under the UVTA, he lacks standing to bring a direct claim for fraudulent transfer. Therefore, the Rule 12(b)(1) Motion to Dismiss Plaintiff's direct fraudulent transfer of assets claim is granted.

46. Defendants also challenge Plaintiff's standing to assert a direct breach of contract claim. (ECF No. 13 at 4–5.) "In the context of a breach of contract claim, the parties who execute an agreement are real parties in interest and have standing to sue." *King Fa, LLC v. Ming Xen Chen*, 788 S.E.2d 646, 649 (N.C. Ct. App. 2016). In addition, North Carolina has long recognized the right of "third-party beneficiaries not in privity of contract to bring an action in their own name to enforce the contract made for their benefit[.]" *Vogel v. Reed Supply Co.*, 277 N.C. 119, 126, 177 S.E.2d 273, 278 (1970). Thus, for Plaintiff to have standing to assert a direct claim for breach of contract, he must allege that he is either a party to the LOI or a third-party beneficiary. *Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship.*, 134 N.C. App. 391, 399, 518 S.E.2d 17, 24 (1999).

47. Plaintiff was not a party to the LOI, which by its terms provides that the agreement is between Sunpath and Successions. (ECF No. 18 at Ex. A, 1.) While Plaintiff's signature does appear on the LOI, he signed on Successions' behalf, not his own. (ECF No. 18 at Ex. A, at 4.) Plaintiff is, thus, not a party to the LOI, as "[a]n

LLC is an entity distinct from its interest owners." N.C. Gen. Stat. § 57D-2-01(a); *see also Coderre v. Futrell*, 224 N.C. App. 454, 457, 736 S.E.2d 784, 787 (2012) (finding that a company representative lacked standing to enforce an agreement where he had signed the purchase agreement in his representative capacity); *Priest v. Coch*, 2013 NCBC LEXIS 6, at *10–11 (N.C. Super. Ct. Jan. 25, 2013) (dismissing a claim by an individual plaintiff who signed the contract on behalf of a law firm).

48. Next, Plaintiff contends that he has standing to bring the breach of contract claim because he is the successor in interest to Successions. (ECF No. 24 at 3.) As noted above, however, Plaintiff alleges no facts to support his conclusory allegation that he is a successor. Instead, Plaintiff argues that because Plaintiff was the sole member of Successions and that the LOI provided that benefits would flow to Successions "or its successor," Plaintiff "not only could have been a 'successor' but was the successor" of Successions. (ECF No. 24 at 3.) Again, Plaintiff's factual allegations fail to support such a contention.

49. Finally, Plaintiff argues that he has standing to enforce the LOI as a third-party beneficiary. (ECF No. 24 at 3.) To state a breach of contract claim as a third-party beneficiary, Plaintiff must allege: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; (3) that the contract was entered into for his direct, and not incidental, benefit." *Hoots v. Pryor*, 106 N.C. App. 397, 408, 417 S.E.2d 269, 276 (1992). "A person is a direct beneficiary of the contract if the contracting parties intended to confer a *legally enforceable* benefit on that person." *Babb v. Bynum & Murphrey, PLLC*, 182 N.C. App. 750, 753–54, 643

S.E.2d 55, 57–58 (2007) (emphasis added). When a third person seeks to enforce a contract made between other parties, "the contract must be strictly construed against the party seeking enforcement." *Id.* Generally, in determining whether a claimant is a third-party beneficiary, courts should look to "the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Vogel*, 277 N.C. at 128, 177 S.E.2d at 279 (quotation marks omitted) (quoting 17 Am. Jur. 2d, Contracts § 304).

50.     Plaintiff's Complaint alleges that, under the LOI, "Wirth was to receive a 40% interest in any new entity or the surviving company." (ECF No. 1 at ¶ 21.) However, the LOI attached to the Complaint presents facts that contradict this allegation. The LOI provided that "*Successions or its successor* shall be entitled to a distribution of 40% of the net profit of the new entity or surviving company after the merger period[.]" (ECF No. 18 at Ex. A, ¶ 2.4(b) (emphasis added).) The fact that any benefit to Successions would have ultimately flowed to Wirth, as the sole member of Successions at the time, does not make Wirth's name interchangeable with Successions and does not show that the parties intended to confer a direct benefit on Wirth.

51.     Although absent from his Complaint, Wirth argues in his brief that Defendants ratified his position as a third-party beneficiary by paying him directly as a member of Sunpath after Successions transferred its clients to Sunpath. (ECF No. 24 at 4.) Wirth also submitted an affidavit stating that "[b]etween joining

Sunpath and February 23, 2013, [he] was paid distributions as an owner would receive." (ECF No. 25 at ¶ 6.) However, in looking at the terms of the LOI, this is insufficient to find that Sunpath and Successions intended at the time the LOI was executed to bestow upon Wirth a legally enforceable benefit.

52. Therefore, the Court concludes that Plaintiff has not carried his burden of demonstrating that he is an intended third-party beneficiary of the LOI.

53. Because Plaintiff can demonstrate no legally sufficient basis to assert standing to enforce the LOI, the Rule 12(b)(1) Motion as to Plaintiff's direct breach of contract claim should be granted.

54. Because "[a] dismissal under Rule 12(b)(1) . . . is not a dismissal on the merits[,]" the Court's dismissal of Plaintiff's claims for lack of standing is without prejudice. *Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 43, at *29–30 (N.C. Super. Ct. May 11, 2017).

## V. CONCLUSION

55. For the foregoing reasons, the Court **ORDERS** as follows:

A. The Court **GRANTS** the Rule 12(b)(1) Motion as to Plaintiff's direct and derivative claims and dismisses these claims without prejudice.

B. The Court **DENIES** the Rule 12(b)(6) Motion as untimely.

**SO ORDERED**, this the 14th day of September, 2017.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases